STATE OF MONTANA, RESPONDENT, *v.* DUDLEY N. DICKINSON, APPELLANT.

[Submitted Nov. 16, 1898.  Decided Dec. 5, 1898.]

*Criminal Law—Larceny by False Pretenses—Ingredients of Offense—Information—Evidence—Variance—Title and Possession—Jury—Disregard of Instructions—Cross-Examination.*

1.  In order to convict under Penal Code, Section 880, declaring guilty of larceny any person who, with intent to defraud the true owner of his property or to appropriate it to his own use, obtains from the possession of such owner, by false representation or pretenses, any money, it is necessary to prove that defendant obtained the money in question under circumstances showing that the owner parted with the title thereto, and not merely with the possession thereof.

2.  In an information under Penal Code, Section 880, defining larceny by false pretenses, it was alleged that defendant falsely and fraudulently represented that he was a certain physician named, the discoverer of a certain specified remedy, and the founder and agent of the drug company by which it was manufactured and sold, and that by means of such pretenses he obtained from the possession of prosecutrix a certain sum of money, with intent, etc. Prosecutrix testified to the representations alleged, and also that she had been induced to call on defendant by means of his advertisement; that she believed in his ability to cure, from what she had been told respecting the physician whom he represented himself to be; and that she paid him the money demanded, relying on his "guaranty," and believing that he would return the money, as agreed, if he failed to cure. *Held,* that the evidence proved that prosecutrix had voluntarily parted with the title to the money in question on the faith of the representations made to her by defendant.

3.  Under an information charging defendant with larceny by obtaining money by means of false pretenses, it was error to instruct that if defendant obtained the "possession" of such money, with intent to feloniously convert it to his own use, in manner and form as charged, such act would amount to larceny, though prosecutrix knowingly and intentionally parted with the possession thereof, "provided she did not part with the title to the same," as such instruction authorized a conviction of larceny, under such information, even where there was a taking against the will of the owner, notwithstanding the requirements of Penal Code, Section 1832, that an information must contain a statement of the facts constituting the particular crime charged.

4.  On a trial for larceny by false pretenses it was error to instruct that, in order to constitute the crime charged, it was necessary that the owner should part with the possession only of his propeaty, relying on such false and fraudulent pretenses, and that

"If the owner, under such circumstances, parts with both the title and possession of such property, the act will not constitute larceny, and will not sustain a verdict of guilty," as proof of the two ingredients mentioned was indespensible to a conviction under an information charging such crime.

5. A conviction which is contrary to the law as given in the instructions to the jury must be set aside, however erroneous the instructions may be.

6. Where an officer of a company for which defendant, who was on trial under a criminal charge, had represented himself to be an agent, testified that defendant was not such agent at the time alleged, it was error to refuse to permit him to prove by such witness, on cross-examination, that the company in question had, shortly before the time alleged, constituted as an agent a person who appeared to be one and the same person with defendant, acting under a different name.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

DUDLEY N. DICKINSON was convicted of the crime of larceny by false pretenses, and he appeals. Reversed.

*Toole, Bach & Toole,* for Appellant.

*C. B. Nolan, Atty. Gen.,* for the State.

HUNT, J.—Appeal from a conviction of the crime of grand larceny by obtaining money under false pretenses. The false pretenses alleged are "that on or about September 16, 1897, the defendant falsely and fraudulently represented and pretended to one Amanda Gray that he was the agent of the Veno Drug Company, a Pennsylvania corporation, and that he falsely and fraudulently pretended to the said Amanda Gray that he was one Veno, the founder and discoverer of the medicinal remedies manufactured and sold by the said Veno Drug Company, whereas in truth and in fact the defendant was not the agent of said company, and was not the said Veno, and the said representations were false, all of which the defendant then and there well knew," etc., "by means of which * * * and by color and aid thereof, the defendant falsely and fraudulently obtained from the possession of the said Amanda Gray, and deprived and defrauded her of, the sum of $87, * * * with intent to deprive and defraud said Amanda Gray, the true owner, of said money, and to appropriate the same to his own use, the said Amanda Gray then and there relying upon and believing said

representations and pretenses to be true; and so the said Dudley N. Dickinson did then and there, in manner and form aforesaid, &ast; &ast; &ast; steal and carry away said money.''

The information charged a violation of Section 880 of the Penal Code, which provides ''that every person who with intent to deprive or defraud the true owner of his property, or to appropriate the same to the use of the taker, or of any other person, takes from the possession of the true owner, or of any other person; or obtains from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing &ast; &ast; &ast; any money; or having in his possession, custody or control as bailee, or agent authorized to take such possession, custody or control, any money, property or article of value of any nature &ast; &ast; &ast; appropriates the same to his own use &ast; &ast; &ast; steals such prop-property and is guilty of larceny.''

The prosecuting witness, Amanda Gray, swore that she knew the defendant under the name of ''Dr. Veno;'' that she went to his office, in Butte, and that he said that he was Dr. Veno; that she wanted him to treat her daughter, who had stiffness of the muscles about the ankle; that the defendant said that he could not take the case for less than $87, and give a a guaranty of cure; that $50 was paid at once, which defendant accepted, but that he would not give a guaranty until the balance was paid; that she then paid the balance, whereupon the defendant gave her the guaranty, which is as follows: ''Butte, Montana, Sept. 20, 1897. Dear Madam: We hereby agree to cure you of your ailment recorded in our books (case No. 844, series B), provided you thoroughly follow the instructions of our physicians, and take remedies prescribed. Veno Drug Company, Pittsburg, Pa.''

The prosecuting witness further testified that defendant said when he gave her the guaranty that it was as good as a check on the bank, and that, if he did not cure her daughter, she would get her money back; that she took the paper, feeling that she would get her money back, if he failed to cure; that defendant had stated that he represented the Veno Drug Com-

pany; that in the Anaconda Standard, a few days previous to her interview with him, a long advertisement had appeared, in which the defendant advertised that he would lecture, and perform acts of marvelous healing, such as making rheumatic cripples walk, etc., that these acts would be performed by Veno, and that Veno would arrive in Butte to establish a permanent office, and to introduce "the great Veno remedies." Witness further said that she was influenced by this advertisement to interview the defendant, and that it was instrumental in inducing her to part with her money, because she believed Veno could help her daughter, and she believed at the time that defendant was Veno, as advertised; that she had heard his lecture, and believed that he was the agent of the Veno Drug Company; and that if she had not believed that he was Veno, and if he had not said that he knew he could cure her daughter, she would not have paid the money to him; that she had been told what a great man Veno was, and that she believed in his ability to cure; that she did not consider that she had loaned the man the money, but she did think she would get it back, because he told her, if he did not cure her daughter, he would pay it back.

On cross-examination the witness said that she considered that the money was hers, after she paid it to the defendant, until he cured her daughter, because the daughter was to be cured, and, if he did not cure her, witness was to get the money back—not the same bills, but the same amount as called for by the guaranty; that she did not know whether the attorneys questioning her would call it a loan or not; that she paid the money for the cure of her daughter, etc.

This evidence is conclusive of the fact that Mrs. Gray parted with the title to all the money paid to the defendant. It is immaterial what her own opinion as to the effect of the transaction might have been. We must view it according to the facts, and without regard to her idea of the legal attitude she placed herself in. She evidently believed the defendant to be Veno, believed that he represented the Veno Drug Company, believed that he was a great physician, and that he could cure

her daughter; but, with a doubt lurking in her mind, she wanted something by way of security in case this "marvelous healer" failed to effect the cure which he was about to undertake. Accordingly she asked for a guaranty, which was not given to her, however, until an additional payment had been made. This paper and the statements made upon its delivery satisfied her. If the defendant failed to cure, she could rely with perfect safety upon the agreement—so defendant adroitly told her, and upon his many assurances she seems to have foolishly relied. But that she ever retained title to the money handed to the defendant, or meant to retain her ownership thereof, is entirely contrary to her evidence of what was said and done. The transaction was plain. Mrs. Gray simply parted with her money upon the faith of the representations made to her by the defendant. She did so willingly; more willingly than she might otherwise have done, because she procured what she thought would save her harmless, if her daughter was not cured.

To this evidence of Mrs. Gray we now apply the law. In order to convict defendant of the crime of larceny by obtaining the money under false pretenses, it was necessary to prove that he obtained Mrs. Gray's money under such circumstances that the prosecutrix meant to part with her title to the money obtained, and not merely with her possession of it. (3 Greenleaf on Evidence, Sec. 160; 2 Wharton on Criminal Law, Sec. 1179; 3 Archibald's Criminal Practice, 467; *Com.* v. *Eichelberger*, 119 Pa. St. 254, 13 Atl. 422; *State* v. *Watson*, 41 N. H. 533; McClain's Criminal Law, 563; Clarke's Criminal Law, 279; *Smith* v. *People*, 53 N. Y. 111.) The evidence of Mrs. Gray was, therefore, competent, under the allegations of the information, and under the law applicable to the crime charged. It tended to prove the facts pleaded, and made a strong *prima facie* case of defendant's guilt.

But the district court entertained a different theory of the law of larceny by false pretenses. The instructions demonstrate this: For example, the jury were charged that "if defendant obtained the possession of the money   *   *   *   with

intent to feloniously appropriate the same and convert the
same to his own use, in manner and form as charged,'' then
this would amount to larceny, notwithstanding Mrs. Gray
knowingly and intentionally parted with the possession of the
money, ''provided she did not part with the title to the same,
but intended that the money should be returned to her, if her
.daughter was not cured.'' This instruction, in effect, directed
the jury that they could convict of the crime of larceny, even
where there was a taking against the will of the owner, under
an information charging defendant with larceny by obtaining
money under false pretenses. This was wrong. Under the
statute (Section 1832, Penal Code), it is necessary for an in-
formation to contain a statement of the facts constituting the
crime charged, in ordinary and concise language. Here the
facts stated were sufficient, if proved, to constitute the crime
of larceny by one, and but one, of the statutory ways by which
larceny may be committed. There could not be, however,
under this information, a conviction of larceny where the facts
involved a trespass and a felonious taking against the will of
the owner, inasmuch as such a state of facts, if proved, would
constitute a fatal variance between the information before us
and such proof. In *People* v. *Dumar* (N. Y.) 13 N. E. 325,
the court of appeals considered this very question, under the
statute of that state, wherein larceny is defined in the same
way as in Montana. Discussing a case where the indictment
was for larceny of the first degree, by feloniously stealing,
taking and carrying away the property of another, but where
the proof was that defendant obtained the property from the
possession of the true owner by false representations, Judge
Danforth said: ''The important difference between the for-
mer law and the present, so far as this case is concerned, is
that the court is no longer called upon to decide whether an
offense is larceny, embezzlement or false pretenses; nor is just-
ice liable to be defeated by too nice a discrimination. Each
of these acts is larceny. But the general principle of pleading
has not been substantially changed. Under either system an
offense consists of certain acts done or omitted under certain

circumstances; and under neither is any indictment sufficient which does not accurately and clearly allege all the ingredients of which the offense is composed, so as to bring the accused within the true meaning and intent of the statute defining the offense.    Under the former this end was secured by rules formulated and applied by the courts through long series of decisions; under the latter it is made imperative by the provisions of the statute.    In the case at bar the defendant was left uninformed of the real act committed by him, and sub jected to the charge of larceny for an act which he did not perform.    The variance is fatal to the proceeding.''    This rule has been followed in the later case of *Peop'e* v. *Jeffery*, 14 N. Y. Supp. 837.    So, in larceny, under the Montana statute, where a prosecutor relies upon allegations that the crime was commited by obtaining money under false pretenses. he will be held to evidence tending to prove guilt by that method alone; and he cannot secure a conviction of larceny involving a trespass, or a larceny committed in any other way than that pleaded.

Again, as the court advanced another step in the law it committed further serious error.    Thus, it instructed that, in order to constitute larceny by means of the aid of fraudulent or false representations or pretenses, it was necessary that the owner part with the possession of his property, relying upon such false and fraudulelnt pretenses, and that in so doing he part with the possession only of such property.    "If the owner, under such circumstances,'' said the court, "parts with both the title and possession of such property, the act will not constitute larceny, and will not sustain a verdict of guilty.'' "And in this case,'' added the court, "if you believe from the evidence that the accused, Dudley N. Dickinson, took from the possession of the said Amanda Gray the property in question, as alleged in the information, by means of the false representations and pretenses as therein alleged, yet if you find that, at the time the defendant so took the said property, the said Amanda Gray intended to part with, and did part with, both title and possession of the said property, then the

defendant is not guilty of the crime of larceny, and you
should acquit him, and your verdict should be not guilty."
The first clauses of this instruction were radically wrong, in
that they misdirected the jury as to the ingredients of the
crime charged, by telling them that where the owner of the
property parts with title and possession, there can be no con-
viction of larceny by obtaining the property under false pre-
tenses.    What we have heretofore said, and the authorities
cited, cover this point.    Then, emphasizing the error noticed,
by applying the inaccurate rules laid down, the court proceeded
to direct the jury to acquit the defendant, if the prosecutrix
parted with both title and possession of her money; that is to
say, the jury were to acquit if they found from the evidence
the existence of those two ingredients which were really indis-
pensable to a conviction of the crime charged, and without
proof of which defendant could under no circumstances be
legally convicted under this information.    Inasmuch as Mrs.
Gray proved by her own undisputed evidence that she had
parted with both the title and possession of the money paid
to defendant, no instruction involving an inquiry by the jury
into that matter should have been submitted at all.    There
was only one way that they could find on it under the evi-
dence; and, when they found that she had parted with title
and possession, there was only one verdict they could con-
sistently render, for they were positively charged, under
such circumstances, to acquit the defendant.    The jury,
however, refused to obey the charge, and convicted de-
fendant in the face of the instructions of the court.    For this
reason, therefore, as well as because of misdirection in the law,
the conviction must be set aside, and a new trial ordered.

Under our system the court is judge of questions of law;
the jury, of questions of fact.    They cannot find against the
instructions.    The duty of a jury is to apply the law given
them by the court, whether or not it conforms or is counter
to their wishes or ideas.    Juries are the exclusive judges of
the credibility of witnesses testifying to facts, and in the de-
termination of disputed questions of fact they may exercise
great latitude, within the limits of the evidence before them;

but they are bound close and fast by the law as the court gives it to them in its charge, and no matter how erroneously it may be stated, or may be thought to be, or how unjust the result of applying it may seem to the jury, their responsibility is not for the law so given, but begins and ends by applying it as so given to the facts as found by themselves. This doctrine was well announced by Chief Justice Pemberton, for the court, in *Murray* v. *Heinze*, 17 Mont. 366, 42 Pac. 1057, and 43 Pac. 714.

Another error is prominent. A witness named Varney, called by the state, testified that defendant was not the agent of the Veno Drug Company, of Pittsburgh, Pa. The witness was the secretary and treasurer of the Veno Drug Company, and swore that he was in a position to know who were and who were not the agents of this corporation, and that he did know that defendant was not one at the time alleged. Upon cross-examination, defendant's counsel sought to prove that, shortly before the time of the commission of the alleged offense for which the defendant was on trial, the Veno Drug Company entered into a contract authorizing one D. N. Dodge, or D. N. Dickinson, who appeared to be one and the same person with the defendant, to sell the medicines of the Veno Drug Company. The state objected to this line of examination, and the court sustained the objection because the defendant could not make out his defense on cross-examination. Surely, if it was competent for the state to introduce proof of the allegation that the defendant did not represent the Veno Drug Company, it was equally competent for the defendant, by cross-examination, to disprove the truth of the statements of Varney by eliciting from him admissions of a most material nature tending to prove that defendant had a contract of agency with the Veno Drug Company, and that the witness knew that he had such contract of agency, although it had been entered into by defendant acting under a name other than Dickinson. Judgment reversed, and cause remanded for new trial.

*Reversed and remanded.*

PEMBERTON, C. J., and PIGOTT, J., concur.