People of the State of Illinois, Plaintiff-Appellee v. Jack Kamsler, Defendant-Appellant.

Gen. No. 50,049.

First District, Second Division.

January 18, 1966.

Rehearing denied February 1, 1966.

Bellows, Bellows & Magidson, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a conviction for the crime of theft, with imprisonment in the Illinois State Penitentiary for a term of not less than one nor more than five years.

In June of 1962, Pete Zaslawsky, a partner in Zaslawsky Iron and Metal Company, met defendant, Jack Kamsler, for the first time. Defendant, and one Allen Solomon, drove into Zaslawsky's place of business in a 1962 Cadillac, presented a business card indicating that they were from the Empire Outdoor Advertising Company and said that they were interested in purchasing steel sheets suitable for building outdoor advertising signs. After Zaslawsky told them that none were available, defendant and Solomon left.

On August 27, 1962, defendant telephoned Zaslawsky and indicated he was still looking for steel. Zaslawsky told defendant that he had 11,000 to 12,000 pounds of rusty, soiled, 20 gauge steel sheets available at $100 per ton. Defendant stated that he wanted to use the steel for signs, so it made no difference whether it was rusty or not. Zaslawsky accepted defendant's terms of an immediate purchase order with payment by check within ten days. A truck driven by William Gallowich of the L. C. Beck Cartage, picked up the rusty steel sheets from Zaslawsky in two loads on August 28th and 29th. Zaslawsky billed Empire $672.50 and rebilled them monthly.

On August 29th, at 8:00 a. m., following instructions from his office, Gallowich met defendant at 77th and Western near a bowling alley. Defendant looked at the first load of steel and told Gallowich to go to Zaslawsky's yard and pick up another 7,000 pounds of similar steel. He told Gallowich to take the steel to Ace Steel Supply Company, 1000 West 22nd Street, and wait for a check. Gallowich picked up the second order of rusty steel from Zaslawsky and went to Ace Steel.

Frank Larson, the former treasurer of Ace Steel Supply, testified that he dealt with one Dick Conlon, in August of 1962 for some rusty steel, allegedly rejected by a customer. Larson identified defendant as the man he knew as Conlon. Larson said he and defendant arrived

at a price of $35.00 per ton for the rusty steel. Larson made out a check for $241.83 to Empire Manufacturing and gave the check to Gallowich.

Zaslawsky testified that despite efforts to contact defendant and Solomon by telephone and letter from September on, he did not hear from them. He never received payment for the steel. At one point Zaslawsky checked 1964 East 73rd Street and found it to be a storefront and an answering service. In November of 1962 Zaslawsky made a formal complaint against defendant and Solomon.

Catherine Rogers of the Southmoor Secretarial Service, 6760 South Stony Island, testified that she knew defendant and Allen Solomon and performed telephone answering service for them, from the autumn of 1961 until July 20, 1962, and that they used the name Empire Manufacturing and Empire Advertising. On the application for the telephone answering service was the name "Dick Conlon." When defendant discontinued the Southmoor Service, he gave 2011 East 75th Street, Chicago, as his new address. Owners of telephone answering services at that address, and a subsequent one, 1964 East 73rd, testified that they took calls for defendant, Solomon and Empire Manufacturing.

Irving Nudelman, owner of a Currency Exchange, testified that he cashed the $241.38 check from Ace Steel to Empire. He said he knew defendant and Allen Solomon to be the owners of Empire.

The State then introduced evidence of nine steel transactions with five other steel and metal companies, all of which occurred prior to August 27, 1962. The defense objected to this testimony on the ground that guilt cannot be established by showing that defendant had committed other crimes. The court overruled the objections and allowed the evidence to be admitted.

On August 27, 1962, defendant and Solomon entered into the above described transaction with Zaslawsky Iron. Defendant was charged with theft by deception, theft by

unauthorized control, and conspiracy. He was tried by a jury, found guilty of theft and conspiracy and sentenced to from one to five years in the penitentiary on the theft verdict.

It is defendant's theory of the case that: one, prosecution of this case was barred by virtue of the four-term act; two, that the indictment was insufficient; three, that the trial court should have granted defendant's Motion for a Bill of Particulars; four, that the trial court improperly admitted into evidence testimony of other crimes; and five, that the finding of guilty was against the manifest weight of the evidence.

■ The first contention raised by defendant, that prosecution should have been barred by virtue of the four-term act, is without merit. Section 748 of chapter 38 provides that:

> Any person committed for a criminal or supposed criminal offense, and not admitted to bail, and not tried by the court having jurisdiction of the offense, within four months of the date of commitment, shall be set at liberty by the court, unless the delay shall happen on the application of the prisoner, or unless the court is satisfied that due exercise has been made to procure evidence on the part of the People, and that there is reasonable grounds to believe that such evidence may be procured at a later day in which case the court may continue the cause for not more than sixty (60) days.

It is defendant's position that the court which entered the order continuing the cause did not have jurisdiction of the offense in that the offense was a felony and had to be prosecuted by indictment, something which the Municipal Court of Chicago could not do. We disagree with defendant's contention that the judge who continued the case did not have authority to extend the time for trial to prevent the fourth term from expiring. An asso-

ciate judge, after the repeal of sec 357 of chapter 37 of the Illinois Revised Statutes, by Article VI, paragraph 5 of the Illinois Constitution, can try cases based on an indictment. Thus, the court had jurisdiction and could continue the case. The result reached in People v. Jarrett, 57 Ill App2d 169, 206 NE2d 835 (1965), is not applicable to the instant case as it is based on the repealed section.

■ Defendant's next contention is that the indictment did not state the offense of theft. It is the State's position that the indictment was framed in the language of the statute and was sufficient to apprise defendant of the charge against him. Section 16–1 of the Criminal Code of 1961 defines theft as follows:

A person commits theft when he knowingly:
(a) Obtains or exerts unauthorized control over property of the owner; or
(b) Obtains by deception control over property of the owner; or
(c) Obtains by threat control over property of the owner; or
(d) Obtains control over stolen property knowing the property to have been stolen by another, and

 (1) Intends to deprive the owner permanently of the use or benefit of the property; or
 (2) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or
 (3) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit.

Definitions of terms found in the above section are located in sections 15–4 and 15–8 of the Code. Section 15–4 states:

■■■■■■■■

As used in this Part C, "deception" means knowingly to

(a) Create or confirm another's impression which is false and which the offender does not believe to be true; or

(b) Fail to correct a false impression which the offender previously has created or confirmed; or

(c) Prevent another from acquiring information pertinent to the disposition of the property involved; or

(d) Sell or otherwise transfer or encumber property, failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not valid, or is or is not a matter of official record; or

(e) Promise performance which the offender does not intend to perform or knows will not be performed. Failure to perform standing alone is not evidence that the offender did not intend to perform. 1961, July 28, Laws 1961, p 1983, § 15–4.

Section 15–8 states:

As used in this Part C, the phrase "obtains or exerts control" over property, includes but is not limited to the taking, carrying away, or the sale, conveyance, or transfer of title to, or interest in, or possession of property.

It is defendant's position that because the indictment does not define the terms "deception" and "obtains and exerts control" the indictment did not clearly state the offense of theft. Defendant relies on People v. Chiafreddo, 381 Ill 214, 44 NE2d 888. We disagree with defendant. The aforesaid case only holds that where the Statute creating a crime does not define the acts con-

stituting the crime, the charge must do so with particularity. The Statute involved in the instant case, on which the indictment is based, defines the acts constituting the crime.

Furthermore, in assessing whether an indictment meets the test of reasonable certainty, all the counts of the indictment may be considered. Shoop v. People, 45 Ill App 110 (1892). Four counts of the indictment were available on arraignment to inform defendant of the charge against him. The fact that judgment was not entered on the conspiracy count does not eliminate that count from providing defendant with information of the charge against him. The indictment taken as a whole stated the offense in the language of the Statute and is sufficient.

Finally, the term "deception" and the phrase "obtains or exerts control" are not subject to variant interpretation. While the court lists five meanings for "deception," none vary substantially from one another.

Defendant's contention that the trial court should have granted defendant's Motion for a Bill of Particulars is likewise without merit, inasmuch as defendant's request was unnecessary. Defendant had already prepared for trial and had his defense formed. People v. Pompey, 53 Ill App2d 118, 203 NE2d 52 (1964).

Furthermore, the Motion for the Bill of Particulars was not timely filed. Section 114.2(a) reads:

> A written Motion for a Bill of Particulars shall be filed before or within a reasonable time after arraignment and shall specify the particulars of offenses necessary to enable the defendant to prepare his defense.

Here the defense was well aware of the content of the indictment, and failure to file the Bill of Particulars until minutes before the trial, was not a filing within reasonable time.

41

██ ██ Defendant next contends that evidence, purporting to prove other illegal transactions committed by defendant, was improperly received by the court. We disagree with defendant. Evidence of other independent transactions was properly admitted to establish a criminal scheme or design. The law is clear that while guilt cannot be established by showing that a defendant has committed other crimes, evidence of other similar crimes is admissible when it shows a common scheme, design or plan embracing the commission of several crimes so related that the proof of one tends to prove the others. People v. Popescue, 345 Ill 142, 177 NE 739 (1931). The State proved that defendant and co-defendant Solomon, told Pete Zaslawsky that they were in the business of building signs, and wanted to purchase metal for that purpose. Defendant and Zaslawsky agreed that when suitable steel arrived, defendant would pay $672.50 within ten days. Defendant had the steel furnished from Zaslawsky and promptly took it to Ace Steel where he sold it for $241.83. Defendant did not pay Zaslawsky. The State then showed nine other transactions with five other metal companies. In each case, defendant alleged he was in the sign business. In each case, he sold promptly after purchase, and in only one case did he pay the metal sales company. In that case, however, the steel was resold at a loss to defendant. Furthermore, subsequent purchases from the same vendor were not paid for. These transactions occurred between December, 1961 and June of 1962. The transaction with Zaslawsky occurred shortly after, in August of 1962. The similar transactions were relevant to show that defendant was involved in a criminal scheme.

Defendant next contends that the evidence did not support the verdict of guilty of the crime of theft in that the evidence only showed that the property was obtained by defendant from the complaining witness by a sale on credit.

██ ██ The State contends that the theft Statute prohibits the obtaining of goods or property by false promises of future payment. We agree. The State proved, one, that defendant created a false impression that he was a sign manufacturer, two, that defendant obtained control over the steel, and immediately sold the steel at a reduced price to a bonafide purchaser and three, that defendant's promise to perform, that is, pay for the steel, was so consistently broken as to show conclusively that defendant never intended to perform. Thus, defendant committed theft in that he intended to, and did, obtain and deprive an owner of his property, by false promises of performance.

██ ██ Finally, defendant contends that the trial court erred in giving an instruction tendered by the State which, while purporting to define deception in the language of the statute, failed to contain that part of the statute which states that "failure to perform standing alone is not evidence that the offender did not intend to perform."

The State's instruction #9 reads as follows:

> The court instructs the jury, in the language of the statute, that "deception" means knowingly to create or confirm another's impression which is false and which the offender does not believe to be true; or to fail to correct a false impression which the offender previously has created or confirmed; or to prevent another from acquiring information pertinent to the disposition of the property involved; or to promise performance which the offender does not intend to perform or knows will not be performed.

Defendant contends the last sentence of subparagraph (e) of section 15–4 of the Criminal Code of 1961 is a most important part of the law defining "deception" and that without that sentence the jury could have found defendant guilty of theft by deception upon the mere

43

showing that defendant failed to perform according to his agreement with Zaslawsky. We disagree with defendant. True, the above sentence should be included in any case where the evidence shows a failure to perform standing alone. Here, however, the evidence shows eight failures to perform on metal purchase contracts, in addition to the Zaslawsky transaction. The jury was not considering a failure to perform *standing alone*. (Emphasis supplied.) To inform the jury about isolated failures to perform, would only serve to confuse the jury and obscure the weight of the evidence. An instruction which is abstract, and not based upon proof, is erroneous. People v. Pokosa, 342 Ill 404, 174 NE 544 (1930). Here the trial judge properly refused any addition to the instruction.

For the above reasons, the judgment is affirmed.

Judgment affirmed.

BRYANT, P. J. and BURKE, J., concur.