Argued March 1, reversed April 2, petition for rehearing denied April 24, petition for review denied July 3, 1973

STATE OF OREGON, *Appellant, v.* ARTHUR JIM (No. 21963), *Respondent.*

STATE OF OREGON, *Appellant, v.* PAUL WHITE (No. 21955), *Respondent.*

508 P2d 462

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Michael V. Johnson,* La Grande, argued the cause for respondents. With him on the brief was F. E. Glenn, Public Defender's Office, La Grande.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

The state appeals from orders sustaining demur-

rers to two indictments. The indictments are identical and the pertinent parts are:

"* * * [T]he above named defendant is accused by the Grand Jury of the County of Union and State of Oregon, by this indictment, of the crime of Theft in the First Degree committed as follows:

"The said [defendant] on the 20th day of October, 1972, in the County of Union and State of Oregon, then and there being, did knowingly, unlawfully and feloniously commit theft of approximately Six Hundred Dollars ($600.00), the property of Larry R. Tsosie * * *."

The grounds for defendants' demurrers were: (1) The grand jury was without jurisdiction, (2) the indictments failed to specifically state the acts constituting the crime, and (3) they failed to state a crime.

ORS 135.630 provides:

"The defendant may demur to the indictment when it appears upon the face thereof that:

"(1) The grand jury by which it was found had no legal authority to inquire into the crime charged because the same is not triable within the county;

"(2) It does not substantially conform to the requirements of ORS 132.510 to 132.570, 132.590, 132.610 to 132.690, 132.710 and 132.720;[①]

"* * * * *

"(4) The facts stated do not constitute a crime; or

"* * * * * *"

The trial court held that the indictment(s) did not inform the defendant(s) with sufficient specificity the crime with which they were charged. The first

_____

① These statutory provisions provide the basis for defendants' demurrers on the grounds the indictments failed to specifically state the acts constituting the crime.

and third grounds were rejected. (ORS 135.630(1), (4).) Thus, the sole question is whether the demurrers were properly sustained under the provisions of ORS 135.630(2), which involves a constitutional question including validity of Oregon's larceny statutes. A discussion of the background is useful and necessary because that background provides precedents that have contributed to the reasoning behind our conclusions.

The 1971 Oregon Legislature adopted a new criminal code for Oregon. Much of the effort was directed at simplifying archaic portions of the old code relating to larceny, embezzlement and related offenses. The fine distinctions made by the law in this area had resulted in complexities related to determining the correct crime with which to charge a defendant. *See State v. Thompson*, 240 Or 468, 473, 402 P2d 243 (1965) (concurring opinion of DENECKE, J.); *State v. Mims*, 235 Or 540, 547, 385 P2d 1002 (1963) (dissenting opinion of O'CONNELL, J.).

One of the elements of larceny created by English common law was that there be a trespass in the taking. As English economy developed and criminal minds found new opportunities, problems arose because the old law of larceny was not broad enough to cover "theft" where the thief was one the owner trusted. Therefore, Parliament created statutory crimes to cover embezzlement and false pretenses instead of expanding the definition of larceny. Narrow distinctions then arose between separate crimes that often enabled criminals to escape punishment. *Cf.* LaFave and Scott, Criminal Law 618-622, § 84 (hornbook series 1972).

This result has brought about efforts like those

in Oregon to simplify the law through revision. Statutes often have been rewritten to include larceny, embezzlement and false pretenses (defined in the language of the old law) within a new offense called theft or larceny. Such efforts in other states to rationalize the law of theft have been subject to attack on similar grounds as those raised in this case. Despite such a legislative revision, the New York Court of Appeals held that an indictment charging in terms of common law larceny would not sustain a conviction on evidence of false pretenses. *People v. Dumar,* 106 NY 502, 13 NE 325 (1887). Similar results were reached in Montana and Washington. *Cf. State v. Dickinson,* 21 Mont 595, 55 P 539 (1898); *State v. Smith,* 2 Wash 2d 118, 98 P2d 647 (1939). The courts there relied heavily on *Dumar.*

Courts in other states have come to different results. In a Massachusetts case the defendant had been charged with larceny and the proof had shown embezzlement. The court upheld the statute which provided for such a charge:

"\* \* \* The St. of 1899, following the recommendation of the commissioners, contains a simple form for larceny, but no separate form for embezzlement or false pretences. In § 12, under the head of 'Meaning of Words,' it is provided that 'the following words when used in an indictment shall be sufficient to convey the meaning herein attached to them'; and among others are these: 'Stealing.—Larceny.—The criminal taking, obtaining, or converting of personal property with intent to defraud or deprive the owner permanently of the use of it; including all forms of larceny, criminal embezzlement, and obtaining by criminal false pretences.' \* \* \* *Under this last statute the word 'steal' in an indictment becomes a term of art and includes the criminal taking or conversion in either*

*of the three ways above named, and hence the indictment is sustained, so far as respects the criminal nature of the taking or conversion, by proof of any kind of larceny, embezzlement, or criminal taking by means of false pretences.* If it be objected that this construction makes the indictment so indefinite that the accused is not sufficiently informed of the nature of the charge which he is called upon to meet, the answer is that it is provided in the same statute (§ 39) that 'the court may, upon the arraignment of the defendant, or at any later stage of the proceedings, order the prosecution to file a statement of such particulars as may be necessary to give the defendant and the court reasonable knowledge of the nature and grounds of the' accusation, and, if requested by the accused, shall so order in all cases in which the court has final jurisdiction, where the accusation would not be otherwise fully, plainly, substantially, and formally set out * * *." (Emphasis supplied.) *Commonwealth v. Kelley,* 184 Mass 320, 323-24, 68 NE 346, 347 (1903).

California courts have reached a similar result. In *People v. Fewkes,* 214 Cal 142, 4 P2d 538 (1931), the information charged the offense as " 'Grand Theft, a felony' " without stating under what theory the state was proceeding (larceny, embezzlement, etc.). The court held that the legislature had eliminated the requirement that the information state the kind of grand theft charged. *People v. Fewkes,* 214 Cal at 149. *See also People v. Myers,* 206 Cal 480, 275 P 219 (1929).

Connecticut reached a result that further extends this principle to another related crime, stating:

"* * * Under the charge of theft the defendant could be guilty if he violated the statute penalizing one who receives and conceals stolen property

\* \* \*." *The State v. Donnelly,* 124 Conn 661, 662, 2 A2d 214 (1938).

In Louisiana an indictment charging "\* \* \* 'theft of an automobile, of the value of Twelve Hundred and no/100 ($1200.00) Dollars, the property of \* \* \*' " was challenged on the grounds it failed to allege intent. The indictment was good because the statute provided that a person may be charged with theft by the simple method of describing the property, the subject of the theft, and stating its value. *State v. Pete,* 206 La 1078, 20 So 2d 368, 370 (1944). The court noted that the constitutional guarantee that the defendant shall be fully apprised in the indictment of the charge against him is protected by the Louisiana statutory provision for the availability of a bill of particulars.

*Cameron v. Hauck,* 383 F2d 966 (5th Cir 1967), *cert denied* 389 US 1039 (1968), was a federal habeas corpus proceeding. The defendant had been charged with theft and the proof had shown false pretenses. The court held that the statute setting out false pretenses (3 Vernon's Ann Penal Code Art 1413 (Texas 1953)) was definitional only and added no elements or defenses to the crime of theft. It said:

> "In the present case we hold that under Texas law, the crimes described by 1410 and 1413 are the same and that a charge under 1410 [theft] notifies a defendant of all elements of a 1413 [false pretenses] offense. Theft is a synoptic concept: the Eighth Commandment condemns theft without explaining every possible nuance and contrivance in its accomplishment. Theft by false pretext is merely one genus of the species, and Texas has treated it so. This statutory treatment makes sense. It is not whimsical conjuration \* \* \*." 383 F2d at 971.

The statutes questioned in the above cases dealt

with distinctions between larceny, embezzlement and false pretenses by retaining the definitions of each separate crime while consolidating them into a single offense. Illinois adopted a more radical approach by attempting to redefine the crime involved to encompass all the old separate crimes in one statutory provision. Ill Stat Ann ch 38, § 16-1 (Smith-Hurd 1970) provides:

"A person commits theft when he knowingly:

"(a) Obtains or exerts unauthorized control over property of the owner; or

"(b) Obtains by deception control over property of the owner; or

"(c) Obtains by threat control over property of the owner; or

"(d) Obtains control over stolen property knowing the property to have been stolen by another or under such circumstances as would reasonably induce him to believe that the property was stolen, and

"(1) Intends to deprive the owner permanently of the use or benefit of the property; or

"(2) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or

"(3) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit."

An indictment charging theft in the language of the statute was held sufficient to apprise defendant of the charge against him. *People v. Kamsler,* 67 Ill App 2d 33, 214 NE2d 562 (1966). *Cf. The People v. Patrick,* 38 Ill 2d 255, 230 NE2d 843 (1967). However, the indictment must allege at least one of the acts described

in parts (a)-(d) and one of the mental states enumerated in part 1, 2 or 3. *People v. Hayn,* 116 Ill App 2d 241, 253 NE2d 575 (1969).

The solution the Oregon Legislature chose is codified in ORS ch 164, ORS 164.005-164.135.

The crime of theft is proscribed in ORS 164.045 and ORS 164.055. ORS 164.045 proscribes theft in the second degree and is irrelevant to this case.

ORS 164.055 reads:

"(1)  A person commits the crime of theft in the first degree if, by other than extortion, he commits theft as defined in ORS 164.015; and

"(a)  The total value of the property in a single or aggregate transaction is $200 or more; or

"(b)  The theft is committed during a riot, fire, explosion, catastrophe or other emergency in an area affected thereby; or

"(c)  The theft is theft by receiving committed by buying, selling or lending on the security of the property; or

"(d)  The subject of the theft is a firearm or explosive.

"(2)  As used in this section:

"(a)  [Defines "Explosives"].

"(b)  [Defines "Firearms"].

"(3)  Theft in the first degree is a Class C felony."

(ORS 161.605 makes a Class C felony punishable by an indeterminate sentence of five years' imprisonment.)

ORS 164.015 describes theft:

"A person commits theft when, with intent to

deprive another of property or to appropriate property to himself or to a third person, he:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof; or

"(2) Commits theft of property lost, mislaid or delivered by mistake as provided in ORS 164.065; or

"(3) Commits theft by extortion as provided in ORS 164.075; or

"(4) Commits theft by deception as provided in ORS 164.085; or

"(5) Commits theft by receiving as provided in ORS 164.095."

ORS 164.065 provides:

"A person who comes into control of property of another that he knows or has good reason to know to have been lost, mislaid or delivered under a mistake as to the nature or amount of the property or the identity of the recipient, commits theft if, with intent to deprive the owner thereof, he fails to take reasonable measures to restore the property to the owner."

ORS 164.085 provides:

"(1) A person, who obtains property of another thereby, commits theft by deception when, with intent to defraud, he:

"[Detailed provisions follow.]"

ORS 164.095 provides:

"(1) A person commits theft by receiving if he receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft.

"(2) 'Receiving' means acquiring possession, control or title, or lending on the security of the property."

Further definitions of terms used in these sections are contained in ORS 164.005.

The key section of the statute, the validity and construction of which is involved in these cases, is ORS 164.025:

"(1) Except for the crime of theft by extortion, conduct denominated theft under ORS 164.015 constitutes a single offense.

"(2) If it is an element of the crime charged that property was taken by extortion, an accusation of theft must so specify. In all other cases an accusation of theft is sufficient if it alleges that the defendant committed theft of property of the nature or value required for the commission of the crime charged without designating the particular way or manner in which the theft was committed.

"(3) Proof that the defendant engaged in conduct constituting theft as defined in ORS 164.015 is sufficient to support any indictment, information or complaint for theft other than one charging theft by extortion. An accusation of theft by extortion must be supported by proof establishing theft by extortion."

The effect of the trial court's ruling on the demurrers at bar is to negate the second sentence of subsection (2) above. It also serves to negate the import of the rest of the section. The defendants' argument is based on the contention that the indictments fail to meet the standards required by the Oregon Constitution, Art I, § 11:

"In all criminal prosecutions, the accused shall have the right * * * to demand the nature and cause of the accusation against him * * *."

The U. S. Constitution, Sixth Amendment states:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation * * *."

The sufficiency of a criminal indictment is also subject to statutory standards.

ORS 132.520 provides:

"The indictment, which is the first pleading on the part of the state, shall contain:

"* * * * * *

"(2) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

ORS 132.530 provides:

"The indictment must be direct and certain as to the party charged, the crime charged and the particular circumstances of the crime charged when such circumstances are necessary to constitute a complete crime."

ORS 132.540 provides:

"(1) The indictment is sufficient if it can be understood therefrom that:

"* * * * * *

"(f) The act or omission charged as the crime is clearly and distinctly set forth in ordinary and concise language, without repetition, in such a manner as to enable a person of common understanding to know what is intended and with such a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case * * *.

"* * * * * *"

■ If an indictment complies with what is now ORS 132.540(1) the constitutional guarantee of the defendant "* * * to demand the nature and cause of the accusation against him * * *" has been met. *State*

*v. Nesmith,* 136 Or 593, 595, 300 P 356 (1931). More recently the court stated:

"* * * We are of the further opinion that the express terms of ORS 132.520(2), 132.530 and 132.540(1)(f), together with decisions by the court arising under those statutes, provide ample guidance upon the question of the sufficiency of an indictment on demurrer. [Citing authorities.]" *State v. Darlene House & James House,* 260 Or 138, 143, 489 P2d 381 (1971).

The issue which we stated at the beginning can only be met by considering whether the indictments are defective for failure to meet the standards of ORS 132.520(2), 132.530 and 132.540(1)(f). If the requirements of these statutes are met the requirements of the Oregon and United States Constitutions will also have been satisfied. *State v. Nesmith,* supra; and *State v. Darlene House & James House,* supra.

*State v. Smith,* 182 Or 497, 188 P2d 998 (1948), involved an appeal from the overruling of a demurrer to an indictment made on the ground that it failed to state a crime. The opinion presents useful discussion. The court said:

"* * * The objects of an indictment are (1) to inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the accused to avail himself of his conviction or acquittal thereof in the event that he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction * * *." 182 Or at 500-501.

The court goes on to state:

"Section 11 of Article I of the state constitu-

tion guarantees to every person accused of crime the right to 'demand the nature and cause of the accusation against him'. We have recognized that this guaranty is absolute and is peremptorily binding upon the courts, but we have held that it does not prevent the legislature from providing for the simplification of indictments through the elimination of unnecessary verbiage. *State v. Dormitzer,* 123 Or. 165, 261 P. 426. Simplification of pleading may be of benefit to an accused, as it tends to clarify the charge against him, but it has been held that the legislature may not constitutionally authorize the omission from an indictment of allegations necessary to describe a specific crime, *Commonwealth v. Freelove,* 150 Mass. 66 22 N. E. 435. It is not within the power of the legislature to declare that to be an indictment which does not set forth those elements of a criminal offense required by the constitution to be contained in an indictment. 27 Am. Jur., Indictments and Informations, section 2; *People v. Bogdanoff,* 254 N. Y. 16, 171 N. E. 890, 69 A. L. R. 1378. One test of the sufficiency of an indictment is that it shall be so drawn that it can be understood therefrom that the act or omission charged as a crime is clearly and distinctly set forth, in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended. Sections 26-703(2) and 26-714(6), O.C.L.A.

"In an indictment for an offense created by statute, it is usually sufficient to describe the offense in the words of the statute. *State v. Packard,* 4 Or. 157, 160; *State v. Branton,* 49 Or. 86, 88, 87 P. 535; *State v. Bailey,* 115 Or. 428, 433, 236 P. 1053; *State v. Burke,* 126 Or. 651, 676, 269 P. 869, 270 P. 756. Sometimes, however, a statement of the particular circumstances of the crime is necessary in order to charge the defendant with having committed specific acts bringing him within the condemnation of the statute, and in those cases the

indictment must be direct and certain as to such circumstances. Section 26-706(3.), O.C.L.A.; *State v. Branton,* supra; *State v. Burke,* supra. It is not sufficient, for example, that the indictment undertake to describe the crime by the use of mere generic terms; it must 'descend to particulars' * * *." 182 Or at 501-502.

"We agree that, in the case at bar, the indictment should have set forth clearly and distinctly the particular acts, words, or other coercive matters constituting the alleged force, threats, and intimidations. 62 C. J. Threats and Unlawful Communications, section 37. The facts stated, however, following the language of the statute, did constitute a crime." 182 Or at 506-507.

The *Smith* court went on to state that because the above issue was not raised by the appellant's demurrer in the trial court he could not now raise the issue on appeal.

In *State v. Anderson,* 242 Or 457, 410 P2d 230 (1966), the sufficiency of a misdemeanor complaint was at issue. The complaint stated the offense in the general words of the statute.

The nuisance statute involved did not describe what acts were to be considered within its coverage except by stating " "* * * any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages the public decency and is injurious to public morals * * *' " is a nuisance. (242 Or at 460.) The court found that the complaint was insufficient, stating:

"While, as a general rule, in an indictment for an offense created by statute, it is sufficient to describe the offense in the words of the statute, yet this is not always the case.

" '* * * [W]here the statute characterizes the offense in mere general or generic terms, or does not sufficiently define the crime or set forth all of its essential elements * * * the statutory words must be supplemented by other allegations which clearly and accurately set forth every ingredient of the offense with such precision and certainty as to leave no doubt in the minds of the accused and the court as to the exact offense intended to be charged.' 27 Am Jur 663, Indictments and Informations § 103." 242 Or at 460-61.

In *State v. Nussbaum*, 261 Or 87, 491 P2d 1013 (1971), where the indictment was for rioting, the court said:

"Defendants contend that the indictments must allege the names of the three co-rioters, or that the names of the other two were unknown, because of defendants' 'right to know what they must defend against.' Defendants also contend that the indictments must allege such facts because each defendant has the right to be informed sufficiently to 'enable him to make his defense,' apparently by showing that 'their participation was not riotous.' " 261 Or at 93.

"* * * [W]e hold that the names of three co-participants in the crime of rioting are not an essential element of that offense under ORS 166.040(1). All that is required by ORS 166.040(1), insofar as this element of that crime is concerned, is proof that there were 'three or more persons acting together.' For the same reasons, we hold that the names of such co-participants are not facts 'necessary to constitute' that crime for the purposes of determining the definiteness and certainty required of such an indictment by ORS 132.520(2), 132.530, and 132.540(1)(f). It follows that such an indictment need not allege the names of co-rioters or that names of the co-rioters are unknown to the grand jury.

"We therefore hold that defendants are not entitled to demand that such facts be alleged because of their 'right to know what they must defend against.' For the same reasons it follows, in our opinion, that a defendant in such a case is not entitled to demand that such facts be alleged so as to 'enable him to make a defense.'" 261 Or at 96-97.

In *State v. House,* 5 Or App 519, 485 P2d 33 (1971), this court had interpreted ORS 132.530 and ORS 132.540(1)(f) as having been adopted in lieu of a provision for a bill of particulars. The Supreme Court reversed (260 Or 138, 489 P2d 381 (1971)) stating that the sufficiency of a demurrer to an indictment was subject to a different test than would be applied to the question of whether a defendant was entitled to a bill of particulars. The court stated:

"Of more importance is the fact that the purpose of a bill of particulars is not to inform the defendant of the charge against him (*as is the test to be applied in determining the sufficiency of an indictment on demurrer*). Instead, its purpose is to provide the defendant with further information respecting that charge so as to enable him to prepare his defense and avoid prejudicial surprise at trial * * *." (Emphasis supplied.) 260 Or at 142-43.

■■ The rule we distil from the Oregon cases discussed above is that an indictment in the language of the statute is sufficient, but in situations where statutory language is not precise it must be implemented so as " '* * * to leave no doubt in the minds of the accused and the court as to the exact offense intended to be charged.' * * *" (*State v. Anderson,* supra, 242 Or at 460-61.) It must allege all of the elements of the crime that must be proven for conviction.

■ The intent of the legislature was that ORS 164.015 define one crime and not several. This intention is made clear by ORS 164.025 (1) which states:

"Except for the crime of theft by extortion, conduct denominated theft under ORS 164.015 constitutes a single offense."

In ORS 164.025(1) and ORS 164.015(1) the legislature is talking about one single criminal intent though it uses two separate phrases to define it. The legislature has taken a single concept, the intent to substantially interfere with the possessory rights of an owner, and defined it with precision by enumerating its component parts. However it is described, the criminal intent is one concept.

■ In similar manner the legislature has defined a single criminal act, substantial interference with property rights or unauthorized control of property, by describing the ways by which such an act can be committed. ORS 164.015(1) is a broad description of that act. An examination of the language of ORS 164.015(1) indicates that the legislature is not talking about separate acts that are included within one offense. It is referring to one single act that is described by the use of four words with definitions that are overlapping. The common element of each is the act the legislature is proscribing. ORS 164.015(1) reads:

"A person commits theft when, with intent to deprive another of property or to appropriate property to himself or to a third person, he:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof; or"

"Takes" is the classical term used to define the act of common law larceny. Its meaning is included within the meaning of "appropriate." Likewise, "obtain" is a

term that is closely related to "appropriate." Webster's dictionary indicates that the definition of "withhold" is contained within the definition of "appropriate." Thus, while ORS 164.015(1) describes "theft" by using four words, the effect is clearly to define one single concept. *See Cameron v. Hauck*, 383 F2d 966 (5th Cir 1967), *cert denied* 389 US 1039 (1968).

■ ORS 164.015 (2), (4) and (5) are merely refined descriptions of acts that are already embraced within the description of theft contained in ORS 164.015(1). This is indicated by the language used as well as the intent expressed in the discussion of the proposed law before the Criminal Law Revision Commission subcommittee responsible for drafting this section (see infra). ORS 164.065, theft of lost, mislaid property, describes an act that is included within the meaning of the words "withhold" and "appropriate" used in ORS 164.015(1). Likewise, ORS 164.085, theft by deception, is a further explanation of the term "obtain" used in ORS 164.015(1). Its meaning is also contained within the definition of "appropriate." ORS 164.095, theft by receiving, is another refinement of the words "withhold" and "appropriate" used in ORS 164.015(1). Thus, ORS 164.015(2), (4) and (5) add no new elements to the crime of theft; they are merely definitions of terms that are used in ORS 164.015(1).

The minutes of the Criminal Law Revision Commission Subcommittee No. 1 indicate that the drafters of the code felt that all acts of theft were encompassed within the definition of ORS 164.015(1) but that ORS 164.065, 164.085, and 164.095 were necessary to insure that it would be clear to the courts that such acts as were described therein were intended to be included within the definition of theft. (The alternative con-

sidered was to indicate this intention within the commentary to the code and thus eliminate ORS 164.015(2), (4) and (5), and ORS 164.065, 164.085 and 164.095.) Criminal Law Revision Commission Subcommittee No. 1 Minutes, February 24, 1968, p 7.

Given that "theft" constitutes a single offense committed by the doing of an act that results in the "appropriation" of the property of another with the intent to substantially interfere with the property rights of the owner, the question now is whether the indictments used in the cases at bar provide adequate notice to the defendants of the crime charged.

■■ Those indictments contain no separate allegation of the criminal intent or act committed by the defendants except by the use of the word "theft." An indictment in the language of the statute is generally sufficient with certain qualifying exceptions. *State v. Smith,* supra; *State v. Anderson,* supra. Here the legislature has provided that the word "theft" when used in an indictment is a term of art. *See Commonwealth v. Kelley,* 184 Mass 320, 68 NE 346 (1903). By the use of the word "theft" the indictment is alleging that a certain act (the appropriation of property) was done with a certain intent (the intent to substantially interfere with the property rights of the owner). Unlike the exceptions to the general rule mentioned in *State v. Smith,* supra, and *State v. Anderson,* supra, the statute in question here fully defines the meaning of the word "theft" and the defendants need look no further to discover what act and crime is being charged. Where the words used in the indictment necessarily imply other words those words need not be used in the indictment. *State v. Reynolds,* 229 Or 167, 366 P2d 524 (1961). Where the words used in the

indictment are sufficiently defined in the statute the definitions need not be included in the indictment. *People v. Kamsler,* 67 Ill App 2d 33, 214 NE2d 562 (1966).

■ The demurrers to the indictments were improperly sustained by the trial court because the procedures outlined in ORS 164.025(2) are not in violation of the requirements of ORS ch 132, the Oregon Constitution, Art I, § 11, or the U. S. Constitution, Sixth Amendment.[2]

Reversed.

[2] Absent a formal method of discovery in criminal cases, indictments containing only the allegations required by statute may sometimes result in a defendant making a satisfactory showing, after hearing the state's evidence, that he is in fact surprised and has a legitimate need of time in which to prepare his defense.