**Melvin CHAPLIN, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 12, 1954.

Rehearing Denied Jan. 21, 1955.

Myers & Logan, Rodes K. Myers, Bowling Green, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., Frank Goad, Commonwealth's Atty., Scottsville, for appellee.

CAMMACK, Justice.

The appellant, Melvin Chaplin, and William Porter Harrison were indicted jointly for the crime of maliciously cutting and wounding Arthur (Jackie) Dennison with intent to kill. Chaplin's demurrer to the indictment was overruled, and upon his separate trial he was sentenced to two years in prison. On this appeal he insists that (1) his motion for a bill of particulars stating who had the knife and who aided and abetted in cutting Dennison should have been sustained; and (2) the instructions given by the lower court did not cover his theory of the case.

Chaplin and Harrison drove from Glasgow to Bowling Green during the after-

noon of June 27, 1953. After drinking a few beers they went to the home of Lilly Cox. According to their testimony, Dennison was sitting on a bed in the Cox home when they entered the house. They said that as they started to leave Dennison grabbed Harrison and jerked him across the bed. Chaplin said he pulled Dennison off of Harrison, who ran out the door. He said further that Dennison then turned around and cut him with a knife; that he hit Dennison and knocked him out the door; and that the injury which Dennison received to his eye must have been sustained when he fell. Lilly Cox, who had been questioned by counsel for the Commonwealth on the morning of the trial, but who testified for Chaplin, said she saw a third party give Dennison the knife before he went into the house. Dennison's story was that he was in the home of his girl friend adjacent to the house where the altercation took place; and that he was asked to go to the Cox house because someone was running through it with a knife. He said that as he walked in the door Harrison jumped up from a couch on which he and Chaplin were sitting, and, after asking him what he was looking for, hit him in the eye. He and Harrison started fighting and he got Harrison down on a bed. Chaplin came over and pulled him off of Harrison and cut him on the hand with a knife. He said he tried to get out the door, but slipped and fell to his knees and Chaplin then stabbed him in the eye with a knife. The testimony of Dennison's sister substantiated his own as to the cutting. Dennison said he had had one beer.

A request for a bill of particulars is addressed to the sound discretion of the trial court. Commonwealth v. Welch, Ky., 243 S.W.2d 909. As a general proposition, a bill of particulars may be allowed when it appears to the trial court that the accused is entitled to notice of what charges he will be called upon to defend. Schleeter v. Commonwealth, 218 Ky. 72, 290 S.W. 1075. In the case at bar Chaplin and Harrison were both engaged in the affray. Furthermore, the evidence for the Commonwealth placed Chaplin in the role of the principal aggressor. He would have been called upon to make the same defense, regardless of whether he was being tried as the principal offender or as one who aided and abetted the principal. Furthermore, the punishment for the two offenses is the same. We think Chaplin was fairly apprised of what charges he was called upon to defend and that the trial court did not abuse his discretion in overruling his motion for a bill of particulars.

The contention that Chaplin was entitled to an instruction upon his theory of the case was based primarily upon the testimony of Lilly Cox. It is argued that the testimony of this witness revealed circumstances amounting to an avoidance of the charge, and therefore Chaplin was entitled to a concrete instruction on his theory of the case because the general instructions were insufficient.

Instructions were given on malicious cutting and wounding; on cutting in sudden affray or in sudden heat and passion; on self-defense; and also the court gave the usual reasonable doubt instruction. In the recent case of Hicks v. Commonwealth, Ky., 269 S.W.2d 181, we pointed out that, where the instructions submitting the Commonwealth's theory of the case are couched in language which can be understood readily by a juror and cover adequately the defense of the accused, it is not necessary to give a specific instruction on his theory of the case when (as in this case) the negative of the Commonwealth's theory is covered by the usual reasonable doubt instruction. We think the reasoning in the Hicks case is applicable to the case at bar. Chaplin's theory of the case was presented adequately to the jurors because they were authorized to find him not guilty if they did not believe beyond a reasonable doubt that he cut and wounded Dennison.

Judgment affirmed.