Argued January 20, re-argued April 23, affirmed with instruc-
tions May 13, petition for rehearing denied June 15, petition
for review allowed August 10, 1971

## STATE OF OREGON, *Appellant, v.*
## DARLENE MARIE HOUSE and JAMES
## GERALD HOUSE, *Respondents.*

485 P2d 33

*Jacob B. Tanzer,* Solicitor General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and Alan H. Johansen, Assistant Attorney General, Salem.

*Donald C. Walker*, Portland, argued the cause for respondents. With him on the brief was Terry W. Baker, Portland.

THORNTON, J.

Defendants were indicted for the murder of their infant child. The indictment states:

"The * * * defendants are accused * * * of the crime of FIRST DEGREE MURDER committed as follows:

"The said defendants on or about the 15th day of October, 1969, in the County of Multnomah, State of Oregon, and the said defendants being the mother and father of and having care, custody and control of Mark Anthony House, a minor child under the age of three years born July 4, 1967, the said defendants did unlawfully, feloniously, and with deliberate and premeditated malice kill the said Mark Anthony House by wilfully, purposely and knowingly failing and refusing during the life of the said Mark Anthony House to secure and to provide the said Mark Anthony House with adequate sustenance, and medical and hygenic [sic] care necessary for his physical well being, and as a direct and proximate result thereof the said Mark Anthony House died, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

Defendants filed separate but substantially identical demurrers on the grounds that "said indictment does not substantially conform to the requirements of ORS 132.520 (2), 132.530 and 132.540 (1)(f)."

After hearing argument the circuit court sustained the demurrers and entered judgment for defendants thereon. The state appeals from this judgment.

The issue on appeal is whether the above indictment described the nature of the crime charged with sufficient certainty.

Oregon Constitution, Art I, § 11, provides that an accused in a criminal prosecution shall have a right "to demand the nature and cause of the accusation against him * * *." The legislature has spelled out this constitutional requirement in the following sections of ORS ch 132:

"The indictment, which is the first pleading on the part of the state, shall contain:
"* * * * *

"(2) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." ORS 132.520.

"The indictment must be direct and certain as to the party charged, the crime charged and the particular circumstances of the crime charged when such circumstances are necessary to constitute a complete crime." ORS 132.530.

"(1) The indictment is sufficient if it can be understood therefrom that:
"* * * * *

"(f) The act or omission charged as the crime is clearly and distinctly set forth in ordinary and concise language, without repetition, in such a manner as to enable a person of common understanding to know what is intended and with a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case; provided, that the indictment shall not contain allegations that the defendant has previously been convicted of the violation of any statute which may subject him to enhanced penalties." ORS 132.540 (1) (f).

*State v. Dougherty*, 4 Or 200, 203 (1871), interprets the above constitutional provision (Art I, § 11) to require:

> "The attributes and elements of the accusation or crime, whenever it is possible to do so, should be set out in the indictment, and the accused is entitled to be informed of the same by a copy of the indictment, and not be compelled to wait until the State introduces testimony to develop the acts and circumstances which are necessary to the identity of the particular crime charged. The reasons for the above requirements are apparent, and need no extended argument in their support * * *."

■ It should be pointed out that there is no statute in Oregon authorizing a bill of particulars in a criminal proceeding. *State v. Green*, 245 Or 319, 327, 422 P2d 272 (1966); *State v. Reyes,* 209 Or 595, 620, 308 P2d 182 (1957). In lieu the framers of our penal code provided for a demurrer on the ground that the indictment is not sufficiently definite and certain. ORS 135.630 (2); ORS 132.540 (1)(f). There is no procedure for the taking of evidence on the hearing of such a demurrer. *State v. Green,* supra.

The principal case upon which the defendants rely is *State v. Davis,* 1 Or App 285, 462 P2d 448 (1969). In that case the mother of the deceased child was charged with first degree murder for deliberately and maliciously " 'failing and refusing to secure and provide the said Matthew J. Davis with the care, guidance and protection necessary for his physical, mental and emotional well-being.' " We there held:

> "The indictment against defendant in no way descends to particulars. It does not state what omissions the state would attempt to prove as a proximate cause of the child's death. Defendant could be held accountable for every act or omission

"since the birth of the child which the jury might find came within the open-ended charge. It provides defendant with little help in making her defense without speculation and guesswork and little, if any, guidance for the trial court in determining what matters were or were not embraced by the charge."

From a reading of the indictment in the instant case it appears that the state intends to prove that the child's death resulted from either a combination of, or one of, three different types of wrongful conduct, namely, failure to provide (1) sustenance, (2) medical care and (3) hygienic care. The terms used to describe the felonious acts, while not as indefinite as in *Davis*, nevertheless are so indefinite and so broad as to raise a serious doubt as to whether defendants have been afforded their constitutional right to be fully informed of the charge.

It is true that the prosecution, in framing this indictment, was confronted with a type of alleged homicide in which it is difficult to be specific in pleading, since it may involve continuing acts or conduct rather than a single homicidal act such as shooting, stabbing, beating, suffocating or poisoning. The indictment indicates that this conduct occurred at some time during the life span of the deceased child, namely, two and one-fourth years, or perhaps throughout the entire span.

Defendants in this case, as in *Davis*, are being required to prepare themselves to meet anything and everything covered by the three categories which they omitted to do during the child's entire life, and which might have contributed to its death.

■ Indictments and informations for homicide are controlled by the same rules applicable to indictments

and informations in criminal prosecutions generally, except where the inherent character of the offense charged requires a greater degree of certainty and precision. 40 CJS 1026, Homicide § 139.

We believe that the inherent character of the offense involved in this case requires that the offense be charged with greater certainty and precision. *State v. Davis*, supra.

First, we hold that defendants are entitled to be informed of the inclusive dates between which the state will offer proof of wrongful conduct as to each of the above three categories.

Second, while the term "medical care" is sufficiently precise and understandable, we are of the opinion that the terms "sustenance" and "hygenic [sic] care" are too broad and indefinite in scope. Are these words of "ordinary * * * language" which would "enable a person of common understanding to know what is intended" (ORS 132.540)? We think not, for the following reasons.

According to Webster's Third New International Dictionary (1969), "sustenance" is defined as:

> "1 a: [M]eans of support, maintenance, or subsistence: LIVING * * * b(1): FOOD, REFRESHMENTS * * * (2): NOURISHMENT * * * 2 a: the act of sustaining or the state of being sustained b: a supplying or being supplied with the necessaries of life * * * 3: something that gives support, endurance, or strength."

What is covered by the term "sustenance"? Does it mean only food, or does it include other necessaries of life? See *Justice v. State*, 116 Ga 605, 42 SE 1013, 1014 (1902).

With reference to the term "hygenic [sic] care," according to Webster's Third New International Dictionary (1969), "hygienic" is defined as "of, relating to or conducive to health or hygiene."

Webster defines "hygiene" as:

"1: [T]he science which deals with the establishment and maintenance of health in the individual and the group * * * 2: conditions or practices conducive to health * * *."

19A Words and Phrases (perm ed) 577, defines "hygiene" as "a system of principles or rules designed for the promotion of health, and 'hygienic' means 'pertaining to health or the science of health'," citing *Lunn v. City of Auburn*, 110 Me 241, 244, 85 A 893, 894 (1913).

Thus "hygienic care" appears to include all aspects of diet, sanitation, clothing, shelter and medical care necessary to health.

What then is covered by the use of the term "hygenic [sic] care"? Does it mean poor diet? Poor sanitation? Insufficient bedding? Will the state seek to prove that the defendants starved the child or that they failed to provide necessary inoculations against childhood diseases? If, for example, the state intends to prove only that defendants intentionally allowed the infant to wallow in its own excreta, as a result of which the child became diseased and later died, then it should have used more specific terms.①

We have examined all the cases we could find, including those cited in the briefs, which involved a

---

① If the state does not know the period of time involved or the cause or causes of death with the requisite certainty and specificity, then our Supreme Court has held that the grand jury may so state in the indictment. State v. Schwensen, 237 Or 506, 526, 392 P2d 328 (1964).

charge of killing another through neglect, starvation or denial of medical treatment. We have also examined cases in jurisdictions where a bill of particulars may be allowed in a criminal case if the indictment, although substantially good, is insufficient for vagueness, indefiniteness and generality. While, as we have already observed, our code does not provide for this procedure, we believe these cases are instructive.

As to the first category of cases, from our examination it appears that in all but one instance, *State v. Staples*, 126 Minn 396, 148 NW 283 (1914), the charge was more specific than in the present case. In only two cases, *State v. Staples*, supra, and *State v. Bischert*, 131 Mont 152, 308 P2d 969 (1957), was the charge actually challenged for vagueness. Both cases are relied upon by the state as grounds for reversing the decision of the court below. In *Staples* the indictment was for manslaughter, not first degree murder, of defendant's infant child. Defendant's challenge was overruled by the trial court judge, following which the defendant was tried and convicted. The issue then came before the appellate court *after* conviction of the defendant. The appellate court held that the indictment was not void from vagueness.

In *Bischert* defendant was charged under an information for manslaughter of his infant child, aged five months. The Montana penal code specifically provided an abbreviated form of information for use in charging manslaughter. (This form had been previously approved by the Montana Supreme Court in a series of cases.) Notwithstanding, the prosecutor elected not to use the short form. Instead he pleaded that the defendant killed his child " "* * * by failing, neglecting and refusing to provide her with the necessary food and attention to maintain her and sustain

her life and by reason of such failure, neglect and refusal, the said Melody Bischert did then and there starve and die, * * *.' " 131 Mont at 154. On appeal after conviction defendant challenged the sufficiency of the information. (It is not clear from the court's opinion whether the defendant made a similar challenge prior to trial.) The Montana Supreme Court, at 157, said:

> "* * * The information contains more than this court has held necessary in manslaughter cases. In view of the ruling in *State v. Duncan*, Mont., 305 Pac.(2d) 761, [upholding the abbreviated form of charge] analysis of the information is unnecessary."

As to the second category of cases (involving a bill of particulars), in *Chaplin v. Kentucky*, 274 SW2d 55 (Ky 1954), the court stated the general rule, namely, that a bill of particulars may be allowed when it appears to the trial court that the accused is entitled to notice of what charges he will be called upon to defend.

■■ The right to require a bill of particulars depends upon whether the offense is charged with sufficient clarity to enable the defendant to prepare his defense without surprise and to plead former acquittal or conviction if later charged with the same offense. *United States v. Smith*, 209 F Supp 907 (DC Ill 1962). Except where an absolute right is guaranteed by statute, the granting of a bill of particulars is usually discretionary with the court. It can only be reviewed on appeal for abuse of discretion. 4 Wharton, Criminal Law and Procedure 720, § 1866 (Anderson 1957).

It is our view that the cases involving the granting or refusal of a bill of particulars are more helpful in pointing out the proper result in this case.

It would appear from an examination of these cases that a bill of particulars would be granted under an indictment such as we are considering here, since the state has not set forth the ultimate facts of the alleged crime with the requisite certainty necessary to enable the defendants to prepare their defense without surprise. See Annotation, Right of accused to bill of particulars, 5 ALR2d 444-569 (1949), 1-12 ALR2d Later Case Service 481-507 (1965). More reason exists in the present case because three separate types of omissions are alleged as having caused the death of the child. Finally, we believe that it is worth pointing out that under the practice in both Minnesota and Montana the accused is entitled to a bill of particulars if the circumstances warrant it. *State v. Holmes*, 65 Minn 230, 68 NW 11 (1896); *State v. Poelaert*, 200 Minn 30, 273 NW 641 (1937); *State ex rel Wong Sun v. District Court*, 112 Mont 153, 113 P2d 996 (1941). It does not appear from a reading of the opinions in *Staples* and *Bischert* if either of the defendants moved for a bill of particulars before trial, as he was entitled to do. Both opinions are silent on this point. However, if, in fact, neither defendant did so but waited until after trial and conviction to attack the indictment on this ground, this may well have been the controlling factor in the refusal of both appellate courts to upset the indictments.

■ We hold that the indictment is insufficient "to enable a person of common understanding to know what is intended," ORS 132.520 (2), and is not "direct and certain as to * * * the particular circumstances of the crime charged * * *," ORS 132.530.

■ Clearly, no prejudice to the state's case would result from requiring that the indictment be made more definite and certain in respect to the particulars men-

tioned. On the other hand, if the defendants are compelled to wait until the state introduces evidence and testimony before they are advised as to the true nature of the charge against them, defendants might well be deprived of a fair trial. *State v. Dougherty*, supra. Preservation of a fair trial for all persons charged with a crime, whether innocent or guilty, is one of the first duties of our judicial system. Fair trial in this instance requires that we send this case back with instructions that the matter be resubmitted to the grand jury so that the indictment can be made more definite and certain. ORS 135.670; ORS 135.690.

Affirmed with instructions.

FOLEY, J., specially concurring.

I concur except, together with my brother FORT, I do not agree with the majority statement that "the term 'medical care' is sufficiently precise and understandable."

In addition I would like to point out: The defendants are charged with killing the child by failing to provide him, during his lifetime (2 years and 3 months) "with adequate sustenance, and medical and hygenic [sic] care necessary for his physical well being."

The attack by way of demurrer to the loosely-drawn indictment comes at the commencement of the proceedings before the issues have been made up or by analogy to a civil action at the same point in the proceedings as a motion to make the complaint more definite and certain.

While after verdict a different rule applies, were this a civil case for wrongful death demanding only money as reparation rather than deprivation of

liberty, as here, a defendant on motion to make more definite and certain would be entitled to be informed with more particularity what and when were his claimed omissions—not by reciting evidence, but ultimate facts.[1] And this would be so in a civil case even though the plaintiff also has the right to the use of discovery depositions. This is not to say that in a given case, where the state in truth does not have evidence from which to supply the ultimate facts of, for example, the specific cause of death, that a crime must go unprosecuted. As pointed out in the majority opinion, there, if the prosecution does not have any further information than alleged as to the cause of death, defendant is entitled to be so advised. *State v. Sack*, 210 Or 552, 300 P2d 427 (1956), *appeal dismissed* 353 US 962, 77 S Ct 1048, 1 L Ed 2d 912 (1957).

FORT, J., specially concurring.

I concur in the court's opinion except that I do not think the indictment sufficiently alleges facts to enable a person of common understanding to prepare to defend against the allegation that the parents failed and refused to secure and provide for their son "medical * * * care necessary for his physical well being, * * * as a * * * result * * * [of which he] died."

---

[1] In a civil case the statutory pleading rule is:

"The complaint shall contain:

"* * * * *

"(b) A plain and concise statement of the facts constituting the cause of action * * *.

"* * * * * *." ORS 16.210 (2),

and in criminal cases:

"The indictment * * * shall contain:

"* * * * *

"(2) A statement of the acts constituting the offense in ordinary and concise language * * *." ORS 132.520.

It is not enough in charging a man with negligent homicide or manslaughter under ORS 163.040 (2) simply to allege he drove negligently. He is entitled to know something more, i.e., did he drive too fast, run a stop sign, drive while drunk, etc.? *State v. Davis*, 207 Or 525, 296 P2d 240 (1956); *State v. Wojahn*, 204 Or 84, 282 P2d 675 (1955). As my brother FOLEY points out, if the state cannot tell him, it should say so.

Nowhere does the indictment say what medical care, which the defendants failed "to secure and to provide," was necessary for the child's well-being and the absence of which caused his death, nor does it identify within the life span of the child when this occurred. The mind boggles at the gamut of the experiences which this allegation might encompass.

Here the charge is essentially one of nonfeasance, not misfeasance. It is completely open-ended. 40 Am Jur 2d 498, Homicide § 222, states:

"The ordinary forms of indictments for homicide are not sufficient where the offense arises out of some negligence on the part of the accused. The indictment in such case must be framed upon the particular facts of the case. The duty which was neglected or improperly performed must be charged, and according to some authorities at least, the acts of the accused constituting the failure to perform, or the improper performance, and the facts and circumstances relied upon to show negligence, should be set forth * * *."

And at 40 CJS 1036, Homicide § 147, it states:

"Where the homicide is charged to have resulted from a negligent act or omission the indictment or information must be with certainty sufficient to put the accused on notice of the offense with which he is charged. The act or omission must be alleged and such facts and circum-

stances as are essential to show negligence, but the duty violated, or the standard of care required, ordinarily need not be averred."

See also, Homicide—Lack of Medical Attention, Annotation, 100 ALR2d 483 (1965). The indictment here in my view does not meet that test.

I believe the foregoing authorities accurately set forth the rule in Oregon in this class of case. See also, *State v. Standard*, 232 Or 333, 375 P2d 551 (1962), and *State v. England*, 220 Or 395, 349 P2d 668 (1960), each dealing with indictments under ORS 163.040 (2) charging involuntary manslaughter. Because here, by the addition of premeditation and malice to what is alleged to be a failure to discharge a duty with due care and circumspection, the charge becomes one of first degree murder, does not change the rules governing what must be plead.

Finally, the problem is here further complicated because there are two defendants charged, even though not alleged to have been acting jointly and in pursuance of a common intent. The sufficiency of an indictment sounding in nonfeasance, when tested by demurrer, must be examined from the standpoint of each, for each defendant is entitled to know what it is that he has failed to do.

SCHWAB, C.J., dissenting.

The majority opinion says that the word "sustenance" is too broad, but the phrase "medical care" is sufficiently precise and understandable. Accepting the broadest possible interpretation of the word "sustenance," it means physical nourishment necessary to life be it food, water or other substance. I fail to see how this word can be too broad, but the phrase

"medical care" not subject to the same vice when it can cover everything from major surgery to aspirin or a cold cloth on a fevered brow. Hygienic care used in the context of the indictment to me means simply "sanitary care." Thus the indictment, if we give its language a common-sense interpretation, charges the defendants with deliberately and with premeditated malice failing to provide their child the minimum requirements of food, medical attention and sanitation necessary to preserve life.

The majority seeks to explain away *State v. Bischert*, 131 Mont 152, 308 P2d 969 (1957), and *State v. Staples*, 126 Minn 396, 148 NW 283 (1914),① on the grounds that there the defendants were charged only with manslaughter and not with premeditated murder. Do the defendants know more about the facts against which they have to defend if they are charged with a lesser degree of homicide?

In *State v. Bischert*, supra, the Montana Supreme Court upheld a conviction under an indictment charging

---

① The majority states:

"\* \* \* It does not appear from a reading of the opinions in *Staples* and *Bischert* if either of the defendants moved for a bill of particulars before trial, as he was entitled to do. Both opinions are silent on this point. However, if, in fact, neither defendant did so but waited until after trial and conviction to attack the indictment on this ground this may well have been the controlling factor in the refusal of both appellate courts to upset the indictments."

I find nothing in either opinion to support this statement. So far as the opinions indicate, the defendants may have unsuccessfully moved for bills of particulars prior to trial. The two appellate courts involved did not say in their opinions that if the defendants needed more facts they could have obtained them by moving for a bill of particulars. They unequivocally held the allegations sufficient. It seems to me that if we can deduce anything from the failure of the opinions to mention the availability of bills of particulars it would be that they were sought and denied.

the defendants with feloniously killing their child by neglecting and refusing to provide it with food, and that as a result, the child starved to death. The distinction between first-degree murder and manslaughter is not based on the acts or omissions; it is based upon the mental attitude and deliberation lying behind those acts. I know of no case which says that an indictment must allege what evidence the state has going to prove deliberation and malice.

Contrary to the position of the majority, *State v. Staples*, supra, holds that an indictment which for all practical purposes was identical to the one at hand was sufficient. It points out that under Minnesota law an indictment is sufficient if it fairly advises defendant of the charges made against him. The court said:

> "* * * This indictment charges that defendant became the mother of a male child, that after its birth and on the same day she wilfully made an assault upon said child, and by acts, procurements and culpable negligence she did wilfully neglect to provide care, nurture, sustenance and medical assistance and aid, to preserve its life, but wholly neglected it, and that in consequence thereof 'and by reason of the * * * felonious neglect, abandonment, and refusal to care for and provide * * * for said * * * child needful food, sustenance, care, aid, and assistance for the maintenance of the life of * * * said * * * child by her, the said Nellie Staples, * * * and * * * for want of proper care, nurture and assistance, and medical assistance and attendance, and by reason of said wilful, unlawful, and felonious acts and culpable negligence of said Nellie Staples committed, the life of said male child was * * * shortened and * * * said * * * child did * * * languish * * * and * * * die.'
>
> "These allegations are sufficient. A parent

who, by culpable negligence, fails to provide care, nurture, sustenance and medical assistance to a child wholly incapable of supplying its own wants, and so causes its death is, under the statute, guilty of manslaughter in the second degree.

"It is contended that this language does not sufficiently charge that the acts of negligence of defendant caused the death of the child. We think it does. It contains very direct charges to this effect, and it is in this respect sufficient. State v. Lowe, 66 Minn. 296, 68 N. W. 1094, cited by defendant, is plainly distinguishable. This indictment is not open to the objections on which the indictment in that case was held invalid." 126 Minn. at 398-99.

The fact is that *State v. Bischert,* supra, and *State v. Staples,* supra, are the only cases that either the majority or I have been able to find in which the indictments are substantially similar to the indictment in the case at bar, and in both instances those indictments were held sufficient.

It may well be that two-way criminal pretrial discovery is desirable in Oregon, particularly in cases such as this. This, however, is a legislative matter and one which has constitutional problems.[2] I do not

_____

[2] State v. Foster, 242 Or 101, 105, 407 P2d 901 (1965), states:
"* * * It is generally held that pre-trial discovery of the state's evidence is not permissible. 6 Wigmore, Evidence (3d ed 1940), § 1859, pages 475, 476.

"It is said that pre-trial discovery permits an accused to fabricate evidence for his defense. More important, however, 'It was felt, furthermore, that to allow the defendant to compel production when the prosecution could not in its turn compel production from the defendant because of the privilege against self incrimination would unduly shift to the defendant's side a balance of advantages already heavily weighted in his favor.' *People v. Riser,* supra, 47 Cal 2d 585, 305 P2d 13. We recognize that the rule restraining pre-trial

believe that absent such provisions we must hold that the type of child abuse and child neglect here alleged is prosecution-proof. We do not know what evidence led to the indictment. We can reasonably assume that the state is not likely to be able to produce an observer who would testify that on a given date the child was given no food, on a given date the child was very ill with some specific ailment and no doctor was called, or that during a given period the child was allowed to wallow in its own filth. We do know that lack of food makes people more susceptible to disease, and lack of sanitation makes people more susceptible to disease. We know that the combination of lack of food, lack of medical care and lack of sanitation may cause death, and that in such an instance the medical evidence might very well be that neither, standing alone, would have been fatal.

The defendants, and apparently the majority agrees, argue that when the grand jury is unable to allege the particulars of the crime with certainty, then the indictment should recite the inability, citing *State v. Davis*, 1 Or App 285, 462 P2d 448 (1969), and *State v. Schwensen,* 237 Or 506, 392 P2d 328 (1964). In the *Schwensen* case the indictment charged the defendant with killing by means unknown. The court there held, at 526:

"The defendant's argument seems to be based upon the contention that if the cause of death is known to the grand jury and is not set forth in the indictment, then a demurrer thereto will lie.

discovery is the subject of debate and criticism. See, for example, Krantz, Pretrial Discovery in Criminal Cases, 1962, 42 Neb L Rev 127. We are not convinced that the rule is unsound. There was no error in the courts refusal to permit the pre-trial discovery."

"This court has stated on numerous occasions that if the cause of death is unknown to the grand jury and it is so stated in the indictment, the indictment complies with the requirements of the constitution and statutes in stating a crime * * *."

The indictment here need not state that the cause of death was unknown, because it does state the cause of death—the combination of lack of food, medical care and sanitation. The indictment here is distinguishable from *State v. Davis*, supra. It tells the defendants what they realistically need to know in order to prepare their defense.

I dissent.

LANGTRY, J., joins in this dissent.