(No. 33162.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER MARION ADAMS, Plaintiff in Error.

*Opinion filed December 20, 1954.*

. C. DENEEN MATTHEWS, of Fairfield, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and FRANCIS S. FEIGER, State's Attorney, of Fairfield, (FRED G. LEACH, and GEORGE W. SCHWANER, JR., of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Walter Marion Adams filed a petition in the circuit court of Wayne County under the Post-Conviction Hearing Act to set aside his conviction for burglary. (Ill. Rev. Stat. 1953, chap. 38, pars. 826-832.) After a hearing the petition was denied. We have granted him leave to proceed as a poor person, and have allowed a writ of error. At his request, one of the two attorneys who represented him at his original trial was appointed to represent him in the post-conviction proceeding in the circuit court and in this court.

Adams was indicted on September 19, 1950, for two separate acts of burglary and larceny. The first indictment charged him with the burglary of a house on July 31, 1950, and the second with the burglary of a filling station on August 4, 1950. Each indictment also charged him with

stealing property from the premises entered. He pleaded not guilty to each indictment. On November 13 he was tried by a jury on the first ·indictment and was acquitted. The following day he was tried on the second indictment. The jury found him guilty and he was sentenced to be imprisoned for a term of one year to life.

Defendant's post-conviction petition alleged several deprivations of constitutional rights, all but one of which may be summarily disposed of. It does not appear that his allegations concerning unlawful search and illegal detention are related to the judgment of conviction, and so they do not present an issue for determination in this proceeding. The trial court concluded that his allegation that the State knowingly used perjured testimony against him was not supported by the evidence, and we agree with that conclusion. Objections to the sufficiency of the indictment are urged, but they are without merit and in any event do not involve a constitutional issue.

The remaining contention is that upon his second trial defendant was deprived of the impartial jury which is guaranteed by article II, section 9, of the constitution. It appears that at the first trial there was in attendance a panel of twenty-four jurors. Twelve of these served on the first trial; the remainder were in court during that trial, and heard part or all of the evidence. Four of those who had served on the first jury also served on the second, and six members of the panel who had been present during the first trial also served as jurors on the second trial.

The first trial was concluded in a single day. Exactly what occurred when the second case was called for trial the next morning is not certain. The official court reporter who was present at the trial was in military service and was not available at the time of the post-conviction hearing. At that hearing, Randall S. Quindry, one of the two attorneys who had represented defendant at his trial, testified that when the second case was called for trial a motion

had been made that the court call a completely new panel of jurors, and that the court had overruled that motion, but had stated that if the defendant moved for a continuance he would continue the case until such time as another jury panel should be called, which would have been the following January or March. He testified further that upon consultation with his client "it was decided that rather than for him to remain in jail, as he was unable to give bond, he would go to trial before the same jury."

The judge who presided at the original trial testified at the post-conviction hearing that when the second case was called for trial, "the attorneys for the defendant came to the judge's bench and there was a suggestion made that was like this. 'Judge, are you going to try this case before this same jury?' I don't remember anything being dictated into the record in the form of a motion by attorneys for the defendant, and my recollection is that was not done. * * * My recollection is, gentlemen, there was no motion dictated into the record. I am positive there was no written motion made, otherwise it would have been placed on my docket, and as to a verbal motion I think Mr. Quindry is mistaken. In my opinion I would have written that motion on the docket to have protected the rights of the defendant, so I will say I remember no motion having been made for a trial of this case by a separate jury. I do remember that the question was asked this court as to when we might have another jury and my recollection is I couldn't give them a definite date at that time, it would depend on not only the other cases on the docket here but also my work in the other counties in which I was holding court. I do remember that I gave this alternative to the lawyers,—I said 'The People have announced ready for trial, and as far as I am concerned, I am ready to try the case. We have the jury here and if the defendant doesn't want to submit his case to this jury for trial I will grant his motion for continuance.' "

Thereafter, when the jury was being selected, defendant's counsel inquired of each venireman whether he had either served in the prior case or had heard the evidence therein, and if so, whether he was of the opinion that he could nevertheless try the present case as fairly and impartially as if he had not done so. A number of the veniremen replied that they would be influenced by the prior proceedings, and were excused. It does not appear that those who swore they would not be influenced were challenged for cause. Some of them, but not all, were challenged peremptorily. As a result of these or other challenges the regular panel was exhausted and the clerk was ordered to issue a special venire for five additional jurors. As finally composed the jury included ten members of the regular panel and two talesmen. Defendant did not exhaust the twenty peremptory challenges available to him. (Ill. Rev. Stat. 1953, chap. 38, par. 742.) His objections to the composition of the jury were renewed by motions for new trial and in arrest of judgment.

Defendant's claim is that it is a deprivation of constitional rights to permit a juror to serve in a trial if he has just served on a jury which acquitted the same defendant of a similar, though separate, offense, or if he has heard part of the evidence in that case. He also argues that since he was unable to furnish bail in the amount at which it had been set, the alternatives with which he was confronted by the judge combined to deprive him of his constitutional right to an impartial jury and a speedy trial.

That we do not approve of the procedure adopted at the original trial does not establish that there was a deprivation of constitutional rights, particularly where, as here, the verdict of the first jury was favorable to the defendant. (See, *e.g., Commonwealth* v. *Hill,* 86 Mass, 591; *State* v. *Wren,* 121 La. 55, 46 So. 99; *Stephens* v. *State,* 137 Tex. Cr. Rep. 551, 132 S.W. 2d 878; *Hyde* v. *State,* 196 Ga. 475, 26 S.E. 2d 744.) In this case, however, we do not

reach the constitutional question which the defendant has sought to raise because it does not appear with sufficient certainty that the objection now urged was placed before the court at the original trial. Defendant was represented at that trial by competent counsel of his own selection, and of course constitutional rights, like other rights, may be waived. *People* v. *Jennings*, 411 Ill. 21.

Objections going to the compenency of a juror must ordinarily be made by a challenge for cause. (*Wilson* v. *People*, 94 Ill. 299.) Under the circumstances of the present case, however, where the alleged defect permeated the entire panel, it may be that if the objection was advanced in the form of an initial motion to discharge the panel, on which the court ruled adversely, renewal by way of a challenge for cause against each individual juror was unnecessary. (*People* v. *Schraeberg*, 347 Ill. 392.) And since the circumstances relied upon occurred after the case had been called for trial, the fact that no written motion was made, formally specifying the grounds of objections, might be overlooked. But on the record here we are unable to say that defendant's counsel made any motion, or evoked any ruling by the court. It is clearly a minimum requirement that counsel should explicitly make known to the court the nature of his objection, and move the court for the particular relief desired. It is not established that there was anything more than an inquiry as to whether the judge intended to try the case before the same panel, and an election to go to trial upon learning that this was his intention.

With respect to the proceedings at the post-conviction hearing, defendant contends that the trial court erred in denying his petition for a writ of *habeas corpus ad testificandum* so that he might testify, and that the hearing should have been continued so that the testimony of defendant's former wife could be obtained. In our opinion the rulings upon these matters were correct. From the

testimony of the witnesses who had been heard, it sufficiently appeared that no testimony by the defendant himself would affect the result. His former wife was beyond the jurisdiction, and there was nothing to indicate that her testimony would in any way support the defendant's contention.

The judgment of the circuit court of Wayne County is affirmed.