THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. FOREST P. WHITLOW et al. (James Marando, Appellant).—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. FOREST P. WHITLOW et al. (Forest P. Whitlow et al., Appellees).

*Opinion filed February 19, 1982.—Rehearing denied March 25, 1982.*

326

UNDERWOOD and SIMON, JJ., dissenting.

Peter N. Soble, of Rock Island, for appellant.

No appearance for the People.

Tyrone C. Fahner, Attorney General, of Springfield (Melbourne A. Noel, Jr., Herbert Lee Caplan, Michael B. Weinstein, and Kenneth A. Fedinets, Assistant Attorneys General, of Chicago, of counsel), for the People.

Louis B. Garippo, Ltd., of Chicago, for appellee Forest P. Whitlow.

F. Jack Nathan, of Spector, Tappa, Kopp & Nathan, of Rock Island, for appellees Joseph P. Delfino and John L. Brewer.

Anton R. Valukas, Jeffrey D. Colman, and Michael B. Brohman, of Jenner & Block, of Chicago, for appellee Truman K. Gibson, Jr.

JUSTICE MORAN delivered the opinion of the court:

Defendants, Forest P. Whitlow, John L. Brewer, Joseph P. Delfino, Truman K. Gibson, Jr., and James Marando, were charged in a 12-count indictment with conspiracy, theft and violations of sections 12 and 14 of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1973, ch. 121½, pars. 137.12(F), (G), (I), 137.14). A jury in the circuit court of Rock Island County found defendants Whitlow, Brewer, Delfino and Gibson guilty on all counts. The trial judge vacated the jury's verdict on counts I and VI, the conspiracy counts, on the ground that a defendant cannot be convicted for both the inchoate and substantive offenses. The verdict on count XII was vacated because it did not properly allege an offense. Judgment was entered on the remaining nine counts. Each of these defendants was sentenced to concurrent terms of not less than one nor more than three years' imprisonment on each count. Gibson was additionally fined $20,000.

Marando's case was severed during trial due to conflicts between his defense and that of the other defendants. He pleaded guilty to counts II through V, and the remaining

counts were dimissed on a motion by the State. Marando was sentenced to concurrent terms of not less than one nor more than three years' imprisonment on each count.

The appellate court consolidated the cases for review, and affirmed Marando's conviction. With respect to the other defendants, it reversed and remanded the cause for a new trial due to prosecutorial misconduct. (86 Ill. App. 3d 858.) We granted leave to appeal to defendant Marando in cause No. 53827 and to the People in cause No. 53872.

The State raises one issue on appeal: Did prosecutorial misconduct prejudice the defendants and thereby make a fair trial impossible? In their cross-appeal, defendants Gibson, Whitlow and Delfino raise the following questions: (1) Was the grand jury process abused? (2) Should the indictment be held void? (3) Was the evidence insufficient to support the jury's guilty verdict? In his separate appeal, Marando contends that the indictment was void because it failed to allege a necessary element of the securities law offenses. This issue was raised for the first time on appeal, but he asserts that it involves a jurisdictional defect and therefore can be raised at any time. Defendant Brewer died, and the appeal has been dismissed as to him.

Count I of the indictment charged defendants with conspiracy to violate the securities law. Counts II through V alleged various violations of the securities law. Defendants were charged in count VI with conspiracy to commit theft. Counts VII through XII alleged that defendants committed theft by deception in violation of section 16—1(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(b)(1)). The indictment basically alleged that, in selling stock in the Royal National Investment and Mortgage Corporation (Royal National), defendants made false statements and did not inform prospective purchasers of material matters relating to the company and the stock. All of the defendants were officers and directors of Royal National with the exception of Marando,

who was a commissioned salesman. Gibson, a lawyer, served as corporate counsel.

The evidence disclosed that, subsequent to the incorporation of Royal National, Marando solicited purchasers of the company's stock. The prospective purchasers were informed that the corporation intended to promote a sludge project, which involved the acquisition and transportation to the Bahama islands of processed wastes for use as fertilizer. Other corporate ventures included the training of Bahamians for employment, the establishment of a scholarship search program and the development of lithographic blankets.

The company's stock sold at $1 per share, and most purchasers acquired 10,000 shares. A number of witnesses testified that they were informed the stock would go public in the near future and sell over the counter at $5 per share. In fact, the company dissolved in a few years without going public. Various witnesses also testified that defendants claimed they each invested $50,000 in the corporation, when in fact only $220 was contributed by one defendant.

Additional evidence showed that the corporation was financed almost solely by proceeds realized from the stock sales. Between March and July of 1973, over 60% of the money acquired was disbursed to the defendants, although they had claimed they received no salaries from the corporation.

Defendants Gibson, Whitlow and Delfino first contend, in their cross-appeal, that the grand jury process was abused because the sole witness appearing before the grand jury was unsworn. We disagree. The transcript does not indicate whether or not the witness was sworn. Therefore, this is not a case where it is clear that the grand jury was presented with unsworn testimony. There is a presumption that an indictment returned by a legally constituted grand jury is valid, and it is sufficient to justify a trial of the

charge on the merits. (See *People v. Jones* (1960), 19 Ill. 2d 37, 43.) Defendants have indicated no circumstances which would overcome this presumption. They merely assert that the transcript fails to state the witness was sworn. In the absence of any evidence to the contrary, we must presume that the grand jury foreman properly administered the oath, as required by law. Ill. Rev. Stat. 1975, ch. 38, par. 112–4(c).

Defendants further assert that the grand jury process was abused because no evidence of criminal conduct was presented to the grand jury. A review of the grand jury transcript indicates that evidence was presented from which defendants' illegal conduct could be inferred. Additionally, there are numerous cases to the effect that a court will not inquire into the adequacy of the evidence. (*E.g., People v. Creque* (1978), 72 Ill. 2d 515, 522.) If it were otherwise, "a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment." *Costello v. United States* (1956), 350 U.S. 359, 363, 100 L. Ed. 397, 402, 76, S. Ct. 406, 408-09.

In their cross-appeal, defendants Gibson, Whitlow and Delfino raise a number of contentions which they assert require dismissal of the indictment. First, they allege that counts II through V of the indictment should have been dismissed because they fail to state an offense. Specifically, they claim that these counts fail to allege specific intent to defraud as an element of securities law violations.

The statute under which defendants were convicted provides, in relevant part:

"Sec. 12. Violation. It shall be a violation of the provisions of this Act for any person:

\* \* \*

F. To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a

fraud or deceit upon the purchaser or seller thereof;

G. To obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading;

\*\*\*

I. To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly." Ill. Rev. Stat. 1973, ch. 121½, pars. 137.12(F), (G), (I).

"14. Sentence. \*\*\*

B. Any person who violates any of the provisions of sub-sections E, F, G, H, I, and J of Section 12 of this Act shall be guilty of a Class 4 felony." Ill. Rev. Stat. 1973, ch. 121½, par. 137.14(B).

The State asserts that these provisions do not mention, and therefore do not require, any mental state on the part of individuals accused of violating the statute. Consequently, it is argued that the legislature intended that securities law violations be absolute liability offenses.

Section 4—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 4—9) provides:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense *clearly indicates a legislative purpose to impose absolute liability* for the conduct described." (Emphasis added.)

Absolute liability cannot apply in this case since the offenses charged are felonies, unless the legislature clearly indicates the intent to impose it. The securities law provisions in question are silent as to the required mental state. However, it has been held that "[t]he mere absence of express language describing a mental state does not *per se* lead to the conclusion that none is required." (*People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 424.)

There is no indication that the legislature intended to impose absolute liability for securities law offenses. Indeed, the harshness of potential penalties for these violations militates against such a conclusion.

When the statute does not prescribe a mental state, and the offense does not involve absolute liability, "any mental state defined in Sections 4–4, 4–5 or 4–6 is applicable." (Ill. Rev. Stat. 1973, ch. 38, par. 4–3(b).) These sections refer to intent, knowlege and recklessness. Therefore, it is necessary to determine which of these mental states should apply to securities law violations.

This court has not previously ruled on this issue. However, section 17 of the antifraud provisions of the Securities Act of 1933 (Act) (15 U.S.C. sec. 77q(a) (1976)) is closely analogous to the Illinois provisions and has been construed by the Federal courts. The Act provides:

> "(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly —
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

Section 24 of the Act contains the applicable penalty provision and provides that "[a]ny person who *wilfully* violates any of the provisions of this title \*\*\* shall upon conviction be fined not more than $10,000 or imprisoned not more than five years, or both." (Emphasis added.) 15 U.S.C. sec. 77x (1976).

A number of Federal cases have held that fraudulent

or specific intent is necessary in order to obtain a criminal conviction under the Act. (See *United States v. Vasilios* (5th Cir. 1979), 598 F.2d 387, 392; *United States v. Vandersee* (3d Cir. 1960), 279 F.2d 176, 179.) However, the courts appear to require intent at least partly because the penalty provision in the Act employs the term "wilfully." (See *United States v. Brown* (9th Cir. 1978), 578 F.2d 1280, 1283-84.) No such qualifying language appears in the comparable Illinois provision. Further, a recent case indicates that either recklessness or knowledge will sustain a conviction for securities fraud. *United States v. Farris* (9th Cir. 1979), 614 F.2d 634, 638.

In *Aaron v. Securities & Exchange Com.* (1980), 446 U.S. 680, 64 L. Ed. 2d 611, 100 S. Ct. 1945, a civil case, the Supreme Court addressed the issue of which mental state is required to enjoin violations of the Act. The court concluded that under section 77q(a)(1), *scienter* is an essential element of the offense. It was defined as "a mental state embracing intent to deceive, manipulate, or defraud." (446 U.S. 680, 686 n.5, 64 L. Ed. 2d 611, 620 n.5, 100 S. Ct. 1945, 1950 n.5.) Although *scienter* was thus defined with reference to intent, the court indicated that the term also includes knowledge. "The language of section 17(a)(1), which makes it unlawful 'to employ any device, scheme, or artifice to defraud,' plainly evinces an intent on the part of Congress to proscribe only *knowing or* intentional misconduct." (Emphasis added.) (446 U.S. 680, 696, 64 L. Ed. 2d 611, 626, 100 S. Ct. 1945, 1955.) In fact, the court did not rule out the possibility that even reckless conduct may suffice for a conviction under the Act.

We adopt the reasoning of the Supreme Court and hold that *scienter* is an essential element of the offense under our analogous section 12(I) (Ill. Rev. Stat. 1973, ch. 121½, par. 137.12(I)). This term embraces intentional or knowing misconduct. Since the indictment in the instant

case charged the defendants with knowing and deliberate violations, it did not fail to allege a necessary element of the offense.

With respect to the requisite mental state under sections 17(a)(2) and (3), analogous to our sections 12(F) and (G), the *Aaron* court concluded that *scienter* was not a necessary element of the offense. (446 U.S. 680, 697, 64 L. Ed. 2d 611, 626, 100 S. Ct. 1945, 1956.) Hence, proof of culpability is not required to sustain a conviction under those provisions. We find it unnecessary to determine whether a lesser mental state is applicable to sections 12(F) and (G). Defendants were charged with "knowingly" or "deliberately" committing the offenses, and knowledge is the most that would be required. Further, the jury instruction required that defendants be found guilty if they acted wilfully, knowingly, or deliberately. (See *Tallman v. United States* (7th Cir. 1972), 465 F.2d 282.) Therefore, the indictment is not void for failure to state the necessary elements of the offense charged.

This same reasoning applies to Marando's separate appeal challenging the indictment. Having determined that the requisite mental state was alleged therein, we need not consider whether the defendant waived this issue by pleading guilty to the securities law counts.

Defendants Gibson, Whitlow and Delfino next contend that counts II through V of the indictment fail to state an offense because the alleged purchasers of the securities are not named therein. It has been held that where the gravamen of the offense is the unlawful act itself, the indictment need not identify the purchaser. (*People v. Adams* (1970), 46 Ill. 2d 200, 203.) Similarly, in a forgery case, where the elements of the crime were sufficiently alleged, it was held unnecessary to aver intent to defraud a specific person. (*People v. Crouch* (1963), 29 Ill. 2d 485, 489.) In the instant case, the elements of the offense were sufficiently alleged, and thus failure to name the purchasers is

not fatal to the validity of the indictment.

Defendants further argue that counts IV and V should be dismissed because they are duplicitous. "Duplicity" has been defined as the joinder of separate offenses in a single count of the indictment. (*People v. Ross* (1961), 21 Ill. 2d 419, 420-21.) Specifically, defendants point out that sections 12(F) and (I) are phrased disjunctively. The indictment charging violations of these provisions is phrased in the conjunctive, as the word "and" is substituted for the term "or" which appears in the statute. This distinction does not render the counts duplicitous. "When a penal statute mentions several acts disjunctively and prescribes that each shall constitute the same offense and is subject to the same punishment, all or any of such acts may be charged conjunctively as constituting a single offense." *People v. Diekelmann* (1937), 367 Ill. 372, 386.

Similarly, counts II and III of the indictment are not void for vagueness or duplicity. Defendants were sufficiently apprised of the charges against them, and it is unnecessary that each alleged misrepresentation and omission be set out as a distinct offense. The indictment did not lack the necessary certainty to charge an offense.

Finally, defendants assert that counts VII through XI should be dismissed because they fail to allege the means by which the thefts were committed. The counts in question charged defendants with theft by deception in the language of the statute. An indictment which charges an offense in the statutory language "is deemed sufficient when the words of the statute so far particularize the offense that by their use alone an accused is apprised with reasonable certainty of the precise offense with which he or she is charged." (*People v. Patrick* (1967), 38 Ill. 2d 255, 258.) In the instant case, the statute clearly specifies the acts constituting the offense. (See *People v. Kamsler* (1966), 67 Ill. App. 2d 33.) Section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 16—1) pro-

vides, in part:

"A person commits theft when he knowingly:
***
(b) Obtains by deception control over property of the owner; [and]
* * *
(1) Intends to deprive the owner permanently of the use or benefit of the property."

The only potentially vague terms in the statute, "deception" and "obtains control," are defined in sections 15—4 and 15—8 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 15—4, 15—8). Since the statute sufficiently defines the offense, the State need not allege specific acts indicating a violation of the statute. *People v. Aud* (1972), 52 Ill. 2d 368, 370; *People v. Peters* (1957), 10 Ill. 2d 577, 580.

The State contends, in its appeal, that any instances of prosecutorial misconduct which may have occurred during trial are insufficient to warrant a new trial. The first alleged instance of misconduct occurred during *voir dire* of the jury. Defendants expressed a concern that one of the accepted jurors, Mrs. Hicks, made certain misrepresentations at her *voir dire* examination. As a result, the court conducted a further examination of the juror in chambers. During the judge's questioning, the prosecutor interrupted and stated: "I think it should be clear that it is not the People, Your Honor, asking these questions." Mrs. Hicks was subsequently selected as forewoman of the jury. We agree with the defendants that this comment was an improper attempt to prejudice the juror against defendants. Apparently, the prosecutor made this statement to advise Mrs. Hicks that he was not responsible for her discomfort.

In his opening statement, the prosecutor informed the jury that the investors were told their money would partly be used to build condominiums. Seventeen of the State's witnesses were investors in Royal National, and none of

them testified about any possible condominium project. The only evidence adduced at trial which is at all related to the prosecutor's statement was the testimony of witness Westercamp. He indicated that representations were made to him concerning the company's desire to acquire money for mortgage purposes. According to Westercamp, reference was made to a housing project in the Bahama islands that might require mortgage money. This evidence, standing alone, is insufficient to support the State's allegation.

Again in his opening statement, the prosecutor argued a fact upon which no evidence was produced. The State told the jury that the investors were not informed of certain matters which would have influenced their decision as to whether to purchase the stock. In this context, the prosecutor commented that "[t]hey [the investors] were never told that the one legitimate bill ever incurred by Royal National, a bill to send somebody to the Bahamas to see if some of these projects might be feasible, a bill for approximately $2,500, a bill amounting to not even one percent of the total income of Royal National never was paid and goes unpaid to this date." The bill to which the State referred was due to Dr. Bauer, a consulting engineer, for his advice as to the feasibility of the sludge operation. The amount was $1,500, not $2,500. More importantly, evidence showed that this bill was incurred after the last shares of stock were sold. Thus, as defendants assert, they could not have informed prospective purchasers about a bill they had not yet incurred. For this reason, the prosecutor's allegation was improper.

Defendants cite, as a further instance of misconduct, the State's direct examination of its witness, Mr. Streeter. Marando allegedly made misrepresentations to Mr. and Mrs. Streeter. The State initially called Mrs. Streeter to the stand, and she testified at length as to the facts and cir-

cumstances of the alleged false statements. The State then conducted a direct examination of Mr. Streeter. His sole testimony was as follows:

"Yeah, I told him [defendant Marando] I didn't have the money to invest and I was strapped and then I started the story a few years before that I lost my daughter and I had an insurance policy on her since she was a little girl and she left two little girls and I had that $10,000 life insurance policy so I asked him if it was a good place to invest it for these two little girls and he said it was and so that is where the $10,000 went."

Defendants moved for a mistrial or, in the alternative, that the testimony be stricken. The trial court denied both motions, though it admonished the prosecutor "to try and refrain from what verges on somewhat inflammatory testimony."

The prejudicial effect of the quoted testimony outweighs any possible probative value. The State knew what the witness would say on direct examination, and the elicited testimony was clearly designed to inflame the jury. It has been held that "[i] t is improper for the prosecutor to do or say anything in argument the only effect of which will be to inflame the passion or arouse the prejudice of the jury against the defendant without throwing any light on the question for decision." (*People v. Dukes* (1957), 12 Ill. 2d 334, 342-43.) This is equally applicable to the examination of witnesses.

Finally, defendants assert that the prosecutor made improper and prejudicial comments during his closing argument. One alleged prejudicial statement concerned the office space rented by Royal National. Evidence showed that in 1971 defendant Gibson rented the premises in question for use as his law offices. In May of 1973, Royal National shared the office space with Gibson, at which time the rent payments increased by approximately $400. With reference to the rental, the prosecutor stated:

"What about their offices? *** I won't for a minute stand here and tell you that a company doesn't need offices but I will tell you that when rent jumps $400 a month for the same space at 625 North Michigan Avenue in Chicago, something is wrong and you can look at the ledger sheets yourself and find out how much Truman Gibson was getting during the time he was associated with this company to pay his rent. Where was that extra $400 a month going? *I submit to you it was going in Mr. Gibson's pocket.*" (Emphasis added.)

It can hardly be disputed that the State inferred defendant Gibson committed theft. This allegation is totally unsupported by any evidence from which the inference could be derived. This error is compounded by the fact that the State had reason to know its allegation was false. There is evidence in the record that the State was informed the rental charge for the premises did not materially increase when Royal National commenced to share the office space with Gibson. Further, all rent payments were submitted by the company directly to the landlord, Tuesday Publications. Gibson received no money therefrom.

Prior to trial, defendants made motions *in limine* to prevent the State from inquiring into their past criminal activity and any unrelated pending charges. This motion was granted. Nevertheless, in its rebuttal argument, the State made questionable references to defendants' backgrounds. With reference to Gibson, the prosecutor commented that "[m]aybe *this time* he will get caught." (Emphasis added.) The inference is that Gibson swindled people on prior occasions and was not "caught." Following this comment, the prosecutor stated: "How many other corporations was he using? How many other shareholders? How much more money was he taking ***?" With reference to defendants Whitlow and Delfino, the prosecutor made the following comment: "They know that if you pay five hundred bucks to R. Wayne Everett and Company you can get a list of the people who have

been taken before \*\*\* and you can tell them a bunch of stories and you know they will fall for it because they have fallen for it before." Again, this comment implies that defendants had previously engaged in illegal conduct.

With regard to Gibson's promotion of the sludge operation, the prosecutor stated:

"What this says I believe is that these projects were truly projects of Truman Gibson and had they gone anywhere at all, the shareholders of Royal National might as well have jumped in the Mississippi River because Truman Gibson was going to be on the gravy train and they were going to have to sit around and split up shares of a company that had been dissolved in 1974."

The quoted comment involves an expression of the prosecutor's own belief. This court has consistently held that it is improper for the prosecutor to express his own opinion as to the defendant's guilt. (*E.g., People v. Monroe* (1977), 66 Ill. 2d 317, 324.) Further, this comment, as well as other cited statements made by the prosecutor, was not based upon any evidence. A "fact not based upon evidence in the case may not properly be argued to the jury \*\*\*." *People v. Beier* (1963), 29 Ill. 2d 511, 517.

Reversible error exists where there are reasonable grounds for believing the jury was prejudiced by the improper remarks. (*People v. Allen* (1959), 17 Ill. 2d 55, 63.) In light of the numerous instances of misconduct which occurred throughout the trial, it is unnecessary to assess the prejudicial effect of each isolated comment. We find that the cumulative impact of the statements may well have prejudiced the jury and constituted a material factor leading to the defendants' convictions. Under these circumstances, defendants Whitlow, Gibson and Delfino are entitled to a new trial. See *People v. Dukett* (1974), 56 Ill. 2d 432, 443.

The State asserts that we should not consider many of these alleged instances of misconduct because the defend-

ants failed to make timely objections to the comments. When a defendant fails to object at trial, any errors in the proceedings are ordinarily deemed waived. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358.) However, this rule is not absolute. A reviewing court may consider errors which affect substantial rights (73 Ill. 2d R. 615(a)), or which, as in this case, are sufficiently prejudicial to deny defendant a fair trial. (*People v. Sullivan* (1978), 72 Ill. 2d 36, 42.) Further, defendants did make timely objections to many of the improper comments.

The State next contends that, even if the comments were prejudicial, they constituted harmless error in light of the overwhelming evidence of the defendants' guilt. It has been held that improper comments may warrant a reversal of the conviction, even where there is considerable evidence against the accused. (See 72 Ill. 2d 36, 44; *People v. Weathers* (1975), 62 Ill. 2d 114, 120.) This is especially true where many of the remarks were extremely prejudicial, deliberately made, and the primary evidence against defendants was circumstantial. See 72 Ill. 2d 36; 62 Ill. 2d 114.

Finally, the State asserts that most of the prejudicial statements were directed solely at defendant Gibson; therefore, the other defendants should not be entitled to a new trial. We disagree. The defendants were tried jointly on both conspiracy and substantive charges, and an "accountability" instruction was tendered to the jury. Thus, the State's theory involved the responsibility of each defendant for the acts of his codefendants. Under these circumstances, improper remarks directed at one defendant were likely to be considered by the jury as evidence against all of them. Further, certain comments made by the prosecutor were directed at each of the defendants.

The final issue raised by defendants Gibson, Whitlow and Delfino is whether the evidence was totally insufficient to support the jury's guilty verdict. It is necessary to

review this question since the cause will be remanded for a new trial. (See *People v. Taylor* (1979), 76 Ill. 2d 289, 309.) Defendants allege that the evidence was insufficient because it was entirely circumstantial and did not exclude every reasonable hypothesis of innocence. However, there was some direct evidence presented against each defendant. Whitlow and Delfino allegedly made numerous misrepresentations to a number of witnesses. Gibson attended stockholder meetings at which he introduced speakers, some of whom provided the investors with false information. He did nothing to correct or clarify false statements made in his presence. In addition, all defendants drew salaries from the corporation, contrary to representations made to the shareholders. Thus, our review of the record indicates that there was sufficient evidence upon which the jury could conclude, as it did, that the defendants were guilty.

For the reasons stated herein, the judgment of the appellate court, affirming Marando's conviction and reversing and remanding for a new trial for defendants Whitlow, Delfino and Gibson, is affirmed.

*Judgment affirmed.*

JUSTICE UNDERWOOD, dissenting:

The defendants were found guilty of all charges in a 12-count indictment at the conclusion of a lengthy and complex trial in which the evidence of guilt is overwhelming. I cannot agree with the majority opinion which now reverses those convictions on the basis of alleged prosecutorial misconduct consisting of isolated comments, most of which were unobjected to, and many of which were legitimate inferences with substantial evidentiary support. Unfortunately, my reasons for dissenting cannot be adequately stated in other than extended form.

Most of the allegedly improper remarks occurred during the State's rebuttal argument. Of the many rebut-

tal remarks cited by the majority as error, the only one preserved for review by timely objection concerned Royal National's rental arrangements and the prosecutor's allegation that $400 a month was "going in Mr. Gibson's pocket." The majority states that the allegation is "totally unsupported" by any evidence (89 Ill. 2d at 340), and that the error is compounded because there is evidence in the record which shows the State had reason to know its allegation was false. The evidence to which the majority refers is an affidavit of W. Leonard Evans, president of Gibson's landlord, Tuesday Publications, which was submitted after trial in support of defendant Gibson's post-trial motion. Evans states that the rental payments for Gibson's law office did not materially increase when Royal National began to share the space, and that he informed a representative of the State of this fact prior to trial. He further states that had he been asked he would have denied the allegation that Gibson received any portion of the rent paid by Royal National. In contrast to Evans' statement, the ledger sheets of Tuesday Publications, stipulated into evidence, at all times show Gibson as the sole tenant, but conclusively demonstrate that the rental payments increased more than $350 a month when Royal National also began to use Gibson's law office. During the period when the space was shared, Royal National paid the entire rent, approximating $625 per month. When Royal National ceased sharing the space, the rent which Gibson resumed paying returned to approximately $275 per month. Evans claimed, however, that the rent was always $600 per month, and his explanation regarding the discrepancy was that Gibson could not afford to pay the entire $600 per month when he had to pay his own rent, and because of his past relationship with the company, he was allowed to pay a lesser amount with the understanding that he would pay the deficiency when he was financially able to do so.

The irregular rent pattern lends support to the prosecutor's assertion that something was amiss. Although the State's allegation was refuted in part by Evans' post-trial affidavit, I am not convinced that the State was required to accept Evans' unlikely explanation of the irregularity in the payments, particularly in view of the fact that Gibson had been counsel for Tuesday Publications and his testimony was somewhat to the contrary. He stated that while his rent did not increase, "The rent for Royal National went up." Despite Evans' denial that Gibson received any portion of the rent payments, it is clear that Royal National paid Gibson's entire law office rent during the time it shared his office, and the amount was in excess of $400. Thus, while Gibson may not have been literally "pocketing" $400 a month, he was literally benefiting by more than $400 a month during the period that Royal National shared his law office. In view of this, it seems to me that the majority's reference to the prosecutor's allegation as "totally unsupported by any evidence from which the inference could be derived" (89 Ill. 2d at 340) is simply not true.

The majority also characterizes as unsupported by any evidence and an improper statement of personal belief the prosecutor's comment that it was Gibson, not the corporation, who would have benefited had the sludge project been successful. Although Gibson introduced evidence that showed he had spent considerable time and effort promoting the sludge project, there was also considerable evidence that he was acting on his *own* behalf rather than for the benefit of Royal National. As the appellate court noted, the jury was presented with the factual question as to how much, if any, of Gibson's activities relating to the sludge project were performed on behalf of Royal National.

During Gibson's attorney's closing argument he asked whether Gibson would have been reporting to the share-

holders on the progress of the projects if he was really acting on his own behalf or keeping it all for himself. He also reviewed the evidence which showed the time and effort Gibson devoted to the sludge project. In rebuttal the prosecutor made the following comment:

> "Counsel has again brought out that Mr. Gibson worked on these projects before Royal National and he worked on them after Royal National. What this says I believe is that these projects were truly projects of Truman Gibson and had they gone anywhere at all, the shareholders of Royal National might as well have jumped in the Mississippi River because Truman Gibson was going to be on the gravy train and they were going to have to sit around and split up shares of a company that had been dissolved in 1974."

There was no objection. To hold, as the majority does, that this statement was without any evidentiary support is patently incorrect. Further, it clearly was not intended as an expression of personal belief but only as a statement of the inferences which the prosecutor believed might be drawn from the evidence. The statement does not even remotely resemble those which this court has held improper. For example, in the only case cited by the majority as authority for its holding, *People v. Monroe* (1977), 66 Ill. 2d 317, 323, the prosecutor charged that defense counsel's closing argument was "fraudulent" and that one portion was "the biggest fraud of all." He further stated:

> "That is a preposterous defense. I have never heard of a weaker defense in five years of practicing in criminal law. Do you know why I can't believe it? Because Mr. Olivero [defense counsel] doesn't believe it himself." (66 Ill. 2d 317, 323.)

In *People v. Hoffman* (1948), 399 Ill. 57, 65, the State's Attorney stated, "If I had one slightest reasonable doubt about Stanley Hoffman's guilt upon my words as a man and as an American, as a father and grandfather, I would say I do not believe he is guilty and I would dismiss this case. But, I know all the facts in this case as you know

various people." Similarly, in *People v. Black* (1925), 317 Ill. 603, 619, "Twice the State's attorney told the jury that he would not ask them to send defendants to the penitentiary if he and his associate were not positive of their guilt." Finally, in *People v. King* (1916), 276 Ill. 138, 154, the State's Attorney made the following statement in his closing argument:

> "I am not in the habit of prosecuting innocent men. It has not been a rule of my office. If the defendant were not guilty he would not be on trial in this court. I know him to be guilty. I am in possession of facts that convince me of his guilt."

As these cases demonstrate, it is improper for the prosecutor to express his own opinion or belief of a defendant's guilt, in part because by doing so he effectively makes himself a witness without the opportunity of being cross-examined. But it is entirely proper for the prosecutor to comment on a defendant's guilt where the comment is based on the evidence (*People v. Black* (1925), 317 Ill. 603, 619; see also *People v. Jackson* (1981), 84 Ill. 2d 350, 360), and it is well established that " '[s]tatements of counsel and argument based upon facts and circumstances proved, or upon legitimate inference therefrom, do not exceed the bounds of proper debate and are not to be discountenanced by the courts.' " (*People v. Burnett* (1963), 27 Ill. 2d 510, 517, quoting *People v. Miller* (1958), 13 Ill. 2d 84, 109; see also *People v. Beller* (1979), 74 Ill. 2d 514, 526; *People v. Williams* (1968), 40 Ill. 2d 522, 528; *People v. Ostrand* (1966), 35 Ill. 2d 520, 531-32.) The quoted comment in this case was not an expression of the prosecutor's own belief; it was a legitimate rebuttal argument based upon the evidence.

With respect to defendants Whitlow and Delfino, the prosecutor made the comment in rebuttal: "[T]hey know that if you pay five hundred bucks to R. Wayne Everett and Company you can get a list of the people who have been taken before *** and you can tell them a bunch of

stories and you know they will fall for it because they have fallen for it before." Again, no objection was made. The majority cites this as improper argument because it implies that defendants had previously engaged in illegal conduct. The court also apparently concludes that the comment was not based upon any evidence. First, I do not agree that, in the context in which it was made, it implied previous illegal conduct; second, there was evidence in the record that supported this statement.

Patrick Wilson, one of the State's witnesses, testified that Delfino came to his home and invited him to Royal National's East Moline office to discuss the possibility of Wilson working for the firm. He later met with Delfino at his office and discussed sales efforts. He stated that Delfino showed him "lead lists," secured from Wayne Everett of the Everett brokerage firm, and that Delfino told him that the people on the list were people who had been known to invest money.

Carl Kran, an investor, testified that he received a letter from Wayne Everett and Company advising him that a Mr. Delfino of Royal National would be calling him to discuss a possible investment opportunity. The letter was admitted into evidence. On cross-examination by a defense attorney, Kran testified he had previously invested in a land deal with R. Wayne Everett. On redirect examination by the State, Kran stated that he never recouped his investment.

Further evidence introduced by the State included a check from Royal National to Wayne Everett in the amount of $500. Thus, another allegedly improper comment, made without objection, had evidentiary support. Viewed in context, the prosecutor did not imply that defendants had previously engaged in illegal conduct. Rather, the inference was that Everett and Company had a list of people who had previously invested in questionable deals, and that the defendants were able to obtain

those names for a $500 fee.

I agree the prosecutor's questions about other corporations and shareholders Gibson was using, and the remark, "[M]aybe this time he will get caught," were improper. Nevertheless, there was no objection, and the error here was not so substantial as to constitute "plain error." (*People v. Jackson* (1981), 84 Ill. 2d 350, 360.) Nor was the evidence so "closely balanced" as to justify our review of this error. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576.) With the exception of the comment concerning the rental arrangement, none of these allegedly improper remarks were even brought to the trial court's attention until after the jury had been instructed and retired to deliberate.

During the in-chambers *voir dire* of one of the jurors, Mrs. Hicks, the prosecutor made the improper statement: "[I] think it should be clear that it is not the People, Your Honor, asking these questions." Thereafter, while the defense attorneys expressed their displeasure with the prosecutor's comment, none objected to Mrs. Hicks' continued presence on the jury, despite the fact that two alternate jurors had yet to be chosen. No one expressed the view that Mrs. Hicks could no longer be an impartial juror. (*Cf. People v. Harris* (1979), 74 Ill. 2d 472, 474-75 (the trial judge did not abuse discretion in failing to discharge a juror on defendant's motion because of the alleged prejudicial effect of the trial court's in-chambers remarks to a juror).) Only after the guilty verdicts were returned and the defense attorneys learned that Mrs. Hicks had been chosen as forewoman did the matter ever come up again. Hence, the issue is waived. See *People v. Ford* (1960), 19 Ill. 2d 466, 478-79; *People v. Adams* (1954), 4 Ill. 2d 453, 458; see also *Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914, 919; *Allen v. Dorris* (1974), 16 Ill. App. 3d 980, 983-84.

In the prosecutor's opening statement he made two

comments which the majority holds objectionable because of the subsequent failure to produce evidence. One such comment was that the investors were told their money would partly be used to build condominiums. As the majority points out, however, one of the State's witnesses testified that he was told of the company's desire to acquire mortgage money for a housing project in the Bahamas. Recently, we held that an opening argument can include a discussion of matters that may reasonably be inferred from the evidence. (*People v. Warmack* (1980), 83 Ill. 2d 112, 125-26 (opening arguments need not be limited to a discussion of direct evidence; "[s]ufficient evidence was presented from which the jury could reasonably infer that defendant owned the clothing, and such circumstantial evidence was sufficient to support the assertions of the prosecutor in his opening argument").) I cannot believe that the slight variance between what was said on one point in the opening statement and the actual evidence was of any consequence in this trial. (*Cf. People v. Allen* (1959), 17 Ill. 2d 55, 63 (prosecutor's reference in his opening statement to an admission by defendant was not reversible error despite the lack of such evidence).) Moreover, this particular point was not raised in any of the defendants' post-trial motions and has been waived. 73 Ill. 2d R. 366(b)(2)(iii); *People v. Adkisson* (1980), 83 Ill. 2d 1, 7; *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 181; *People v. Foster* (1979), 76 Ill. 2d 365, 380.

The prosecutor also informed the jury in his opening statement that the investors were not told that the one legitimate bill incurred by Royal National was not paid. As the majority notes, this allegation was improper because the bill was incurred after the last shares of stock were sold. Nevertheless, the prosecutor cited numerous misrepresentations and omissions by defendants that would have influenced an investor's decision on whether to purchase stock, and considerable evidence was produced

in support thereof. Further, the jury heard the actual evidence which disclosed when this bill was incurred. Thus, the reference in the opening statement to the unpaid bill the investors were not told about was not reversible error. See *People v. Allen* (1959), 17 Ill. 2d 55, 63.

Nor do I believe that Perry Streeter's testimony justifies a reversal. Considering all of the evidence in this lengthy record, and the number of witnesses who testified concerning the defendants' misrepresentations, the Streeter testimony could not, in my opinion, have been a material factor in the conviction of these defendants. (*People v. Dukett* (1974), 56 Ill. 2d 432, 444, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226.) Some 23 witnesses testified on behalf of the State. Their testimony, together with the voluminous documentary and other evidence, overwhelmingly established defendants' guilt. Contrary to the representations made to the investors that each defendant had contributed $50,000 in corporate capital, the largest such contribution was $220. Despite their assertions that no salaries were being paid them, more than 60% of the money invested by the victims was disbursed to defendants in the form of salaries and expenses. Numerous other misrepresentations and failures to disclose were testified to as occurring prior to and during Royal National's brief existence. In sum, I simply cannot believe that this verdict could have been otherwise had any of the other alleged errors not occurred. *People v. Jackson* (1981), 84 Ill. 2d 350, 360.

I would affirm the convictions of all defendants.

JUSTICE SIMON joins in this dissent.